## STEPP et al. v. TEXAS & P. RY. CO.
### (No. 1884.)

Court of Civil Appeals of Texas. Beaumont.
Sept. 11, 1929.

Rehearing Denied Oct. 2, 1929.

Maurice Short and Dallas Ivey, both of Center, for appellants.

E. H. Carter and Davis & Davis, all of Center, for appellee.

WALKER, J. ▆ Appellant brought this suit against appellee for $1,000 damages, alleging that, while a passenger of appellee for transportation from Snyder, Tex., to Longview Junction, she was wrongfully put off the train at Gladewater, a station about twelve miles from her destination, by reason of which she suffered mental and physical pain, etc. The jury, answering special issue No. 1, found that appellee was not responsible for appellant getting off the train at Gladewater, and answered no other question. The answer to this issue was decisive of the facts against appellant's claim, and no error was committed by the trial court in receiving the verdict without the other questions being answered. Appellant also complains of the trial court's definition of negligence. In finding that appellee, through its agents, servants, and employees, did not cause appellant to get off the train at Gladewater, the issue of negligence submitted by question No. 2 became immaterial, and whether or not negligence was properly defined in no way injured her rights.

▆ She also complains that the court erred in refusing her a new trial because of the misconduct of the jury. We think this assignment should be sustained. Fed Youngblood, one of the jurors, testified on motion for new trial:

"That was my first jury service. * * * The statement was made during our deliberations that if the plaintiff recovered a judgment it would not be worth anything to her— it seems to me that Mr. O'Bannion first mentioned it. If we gave the lady a judgment against that railway company that the railroad would appeal and have a new trial and beat her anyhow. * * * He mentioned one other case about a lady coming up on the Santa Fé train * * * and he happened to meet the train and that she asked the conductor if she had passed whatever station she wanted to go to and was told she had and he said that party never sued the railroad. * * * And he told about when he was coming up on the train from some place down the railroad where he knew a negro had bought and paid for a round trip ticket * * * and they put him off but that negro never sued, and he said they had as much right to sue for damages as this plaintiff but they had not sued."

He further testified that some one suggested while they were deliberating on the case that the plaintiff got off the train of her own accord, and further that an officer, late in the afternoon, came to them while they were deliberating, and told them it was getting time they were deciding the case. As to the effect these things had upon the verdict, he said:

"I was influenced enough by what was said there to come over. * * * Mr. O'Bannion's statement that the plaintiff got off the train of her own accord and would not recover any judgment we might render caused me to change my vote because I had voted the other way. We had one question as to whether or not she got off of her own accord or whether the brakeman caused her to get off and I believed he caused her to get off as I did not believe she did that voluntarily. * * * I was finally influenced in coming over to the defendant after we had talked and read over

everything all the way around about if she got a judgment she would not get anything out of it anyhow and that she would be put to more trouble and that somebody had to decide it anyhow and it had might as well be us and as some of the rest of them had already come over until they were most on the defendant's side, and rather than hang the jury I voted the other way, but I felt pretty well satisfied about it after studying the whole thing over. I was influenced some by those statements about the other cases—that had something to do with it and it led me to believe that it was not necessary hardly for her to sue them when other folks in cases like that didn't sue."

He further testified:

"I felt pretty well satisfied with the verdict when I voted like I did. * * * After it was argued and discussed I finally decided I might be wrong and I believed it ought to be decided the other way. * * * Neither Mr. O'Bannion or any other member of the jury brought in any new evidence to influence me to render a false verdict."

Examination by the court: "I agreed to that verdict out in the jury room and that was my verdict."

Redirect: "The talk of the other cases and the fact they did not sue, and the talk about the girl getting off the train while asleep did not cause me to answer that question against my will but it helped to cause me to vote that way. I suppose Mr. O'Bannion was for the defendant and he kept telling those things about the other cases and it seemed like if they did not sue she ought not to and we would just let it go and she would be more particular next time and if they didn't sue she ought not to but that was not my reasons altogether for making that verdict."

Recross: "The reason I changed was that I was satisfied from the evidence and the charge of the court that that was the proper answer to the question."

The testimony of the other jurors was sufficient to convince the court, beyond a reasonable doubt, that none of the alleged acts of misconduct wrongfully influenced the jury except as to the issue of improper argument to the effect that the railroad would appeal and secure a new trial and finally win the case. We are so clearly convinced that the other issues were settled by the evidence that we do not further review the testimony relating to them. One other juror testified to the improper argument. The ultimate result of the case was of no concern to the jury. Their duty was to find the facts in answer to the special issues submitted to them, and in discharging this duty they could look only to the testimony and the court's charge. It seems to us that this argument was effectively used to influence the juror Youngblood to change his verdict. In fact, he did change his verdict, and he attributes his change to the influence, in part, of this improper argument. To an inexperienced juror, as Youngblood was, we think this argument was reasonably calculated to influence him in changing his verdict. St. Louis, B. & M. R. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024, 1025, is interestingly in point on this assignment. Speaking for the Commission of Appeals, Judge Leddy said:

"With reference to the third ground of misconduct, one of the jurors testified that it was mentioned in the jury room that, if the jury gave too much, the 'railway company will appeal it and it will lay in the appeal court for quite a while' Another juror testified that he thought some one made the remark: 'Now, if you won't make it too big the railway company will pay off and not appeal it.' This seems to be all that occurred with reference to a discussion along this line. It was disclosed that at the time this discussion took place the various jurors favored amounts from $35,000 to $65,000, a majority of the jury favoring a verdict substantially larger than that which was afterwards agreed upon. It seems that this improper argument was effectively used by jurors who favored a much smaller verdict than the remaining jurors in order to cause such jurors to agree to a smaller amount. These remarks were reasonably calculated to and it appears did, bring about a reduction in the amount of the verdict that would otherwise having been rendered. While it was undoubtedly improper for the jury to discuss the question as to whether an appeal would be taken in considering the amount of the verdict, yet it appearing that such action brought about a lesser verdict than would otherwise have been rendered, plaintiff in error is in no position to complain."

If the argument there discussed "was undoubtedly improper" and was relieved of error only upon an affirmative showing that appellant was not prejudiced thereby, we think the argument here "was undoubtedly improper," and, upon the affirmative showing of injury, constituted reversible error.

For the errors discussed, the judgment of the trial court is reversed, and the cause remanded for a new trial.

Reversed and remanded.