### SCOTT v. TEXAS ELECTRIC RY. CO.
### No. 1230—5602.

Commission of Appeals of Texas, Section B.
Nov. 26, 1930.

Randell & Randell, of Sherman, and Touchstone, Wight, Gormley & Price and Robert B. Holland, all of Dallas, for plaintiff in error.

Worsham, Rollins, Burford, Ryburn & Hincks and A. S. Rollins, all of Dallas, for defendant in error.

LEDDY, J.

One of defendant in error's interurban cars collided with a buzzard with such force as to shatter the glass in the front end of the car, causing a piece of same to penetrate plaintiff in error's left eye, destroying the sight and necessitating the removal of the eyeball.

He filed this suit to recover damages because of the injury thus sustained. He alleged, and the jury found in answer to special issues, that his injury was the proximate result of defendant in error's negligence in the following respects:

First, in failing to furnish him a safe method of transportation.

Second, in failing to have the car equipped with glass screens and guards so as to prevent the glass from being shattered by such a collision.

Third, in running the car at the rate of speed it was running at the time of the collision.

Fourth, in failing to keep a sufficient lookout.

Fifth, in failing to slow down sufficiently after the motorman discovered the buzzards in the pathway of the car.

Sixth, in failing to sound an alarm after such discovery.

Seventh, in leaving on its track a dead opossum which attracted the buzzards.

The Court of Civil Appeals, 21 S.W.(2d) 24, reversed the judgment, which the trial court entered upon findings favorable to plaintiff in error, and rendered judgment in favor of defendant in error upon the ground that the undisputed evidence showed the buzzards flew away from the track and out of sight of the witnesses before the collision, hence the car did not run upon and collide with one of them before it got clear of the track.

The conclusion thus reached by the Court of Civil Appeals is unquestionably a sound one if the accident happened as detailed by defendant in error's motorman. He testified that he saw two or three buzzards on the track about two hundred yards in front of his car; that they flew up and out of his sight to the west; and that after the car had about reached the place from which they arose, a buzzard flying from the east or southeast suddenly flew in front of the car and crashed through the center pane of the glass and fell inside.

Plaintiff in error introduced as a witness a Mr. Lowenstein, he being the only one, aside from the motorman, who testified to seeing the buzzards before the collision. We reproduce his entire testimony as to the action of the buzzards immediately before the collision. He testified as follows:

"I was sitting on the west side of the car.

I was sitting next to the aisle. I was sitting where I could see ahead. I was looking ahead. I noticed two flying—two birds fly up. Before I knew it they crashed through the window; one of them crashed through the window. I was looking ahead on the track and saw two buzzards fly up. When they flew up from the track there, I judge they were fully 150 or 200 feet from the car; when they flew up from the track they were about that distance, I say; I don't think it was a minute after that that the crash came. By a minute I mean 60 seconds.

"To indicate the time which elapsed between the time I saw the buzzards fly up and the time I heard the crash, I saw them fly up and before I knew it, there was one of them crashed through the window. I seen them fly up and then (smack) crash through the window. Up they went and then (smack) crash he went through. As to how I would express that in words, all I can say is that when I seen them fly up, before you could say, one-two-three-four-five, he went through the window."

On cross-examination he testified:

"As to whether or not I had seen these buzzards before they flew up, all I can recall now is seeing them fly up. They were right in the center of the rails; between the rails. The first thing I saw was the flying up; that is when I saw them. As to whether or not I continued to see them between then and the time the crash occurred, I seen them fly up and the first thing I know, I heard a crash. I did not see them between the time of the flying up and the crash. I do not know where the other buzzard went."

If it can be fairly held that the jury were justified in inferring from the testimony of the above witness, in connection with other facts and circumstances shown by the record, that the buzzard with which the car collided was struck as he flew up from the track and before he got clear of the same, then the Court of Civil Appeals was not justified in holding that the evidence was undisputed upon this point.

The jury might have consistently found, by accepting a portion of the testimony of the motorman, that there were three buzzards on the track as the car approached. On this point the motorman testified: "I think there were three buzzards; there might have been two, but I think it was three, the best of my memory. I don't know what they were doing, whether they were eating some carcass or not. They were just on the track. * * * It seems to me there were three buzzards on the track."

The witness Lowenstein only saw two buzzards fly up as the car approached them. We think under this state of the evidence the jury were justified in indulging an inference that it was the third buzzard which collided with

the car, and that he flew up from the track after the other two had disappeared and at a time when the car was so near that he was struck immediately on getting as high from the ground as the glass window in the front end of the car.

The jury were also justified in finding that the car was approaching the buzzards upon the track at a rate of speed in excess of 50 miles per hour, and that the speed of the car was not slackened, nor was the gong sounded, prior to the collision, and that the car got within 150 feet of the buzzards before any of them attempted to fly off.

The motorman operating the car was bound to have known that if he got within such close distance of the buzzards going at the rapid speed at which the car was traveling that these large, ponderous birds might not be able to clear the track before the car reached them, and if one of them should collide with the glass in the front end of the car it would be shattered with such force that a passenger might be injured thereby. It was therefore his duty, upon discovering the buzzards upon the track, to exercise that high degree of care which a very cautious, competent, and prudent person would have exercised under the circumstances to prevent a collision by sounding the gong and slackening the speed of the car in order that the buzzards might be frightened and given time to fly clear of the track before the car reached them.

The motorman seems to have been under the very strong impression that there were three buzzards on the track. According to Lowenstein's testimony, the third buzzard did not fly up from the track with the other two. The collision occurring very quickly after the first two flew up, left room for the jury to indulge the inference that the third one was slow in getting up, and if he did in fact attempt to fly off after the other two had flown clear of the track, then the car must have reached the point where he was almost at the time he started to fly. Inasmuch as the car traveling at the rate of speed it was would have negotiated the distance of 150 feet in a period of from 1½ to 2 seconds, there was very little time for the third buzzard to clear the track if he attempted to fly after the other two had arisen and flown therefrom. This is especially true in view of the testimony which showed that buzzards are not rapid flyers and do not make a quick start; that when they are frightened and attempt to fly it is necessary that they hop or run a few steps before they take the air; and that they make their get away more slowly than the average bird.

The jury were also justified in drawing the inference that the third buzzard did not get up to fly until the car was very close to him, as he had not come within view of the witness Lowenstein, who was sitting next to the aisle on the third seat from the front of the car,

when the car reached a point within 150 feet of the place where the buzzards were sitting. The jury might reasonably have concluded that in the short space of time remaining after the other two had gotten clear of the track the third buzzard could not have arisen and gotten clear of the track before the car reached him.

Furthermore, we are inclined to the view that Lowenstein's testimony also furnished a basis for a conclusion by the jury that the car collided with one of the buzzards which the witness saw fly up before it cleared the track. It is true the witness testified he did not see the two buzzards between the time of the flying up and the crash, but the jury may have concluded that this was due to the fact that they were on the side directly in front of the motorman's cab and were therefore momentarily out of line of the witness' vision down the center aisle of the car. Moreover, the witness did not testify that he was continuously looking ahead from the time he saw them fly up until the crash occurred.

Either of the conclusions above set forth may have seemed more reasonable to the jury, if they accepted Lowenstein's testimony that the two buzzards flew up from the track when the car was within 150 feet of them, than to accept the theory of the motorman either that one of the two buzzards which flew to the west of the track could have circled the car and flew in front of it within two seconds, or that a buzzard never on the track while flying darted suddenly in front of the car.

We are therefore of the opinion that the Court of Civil Appeals was in error in holding that the undisputed evidence showed that the car did not collide with one of the buzzards on the track before he flew off, and that the motorman could not, by the exercise of any degree of care, have prevented the collision. While such conclusion is inescapable when the motorman's evidence alone is considered, we think a different one could reasonably and fairly be drawn from the testimony of the witness Lowenstein, when viewed in connection with all of the other facts and circumstances.

The Court of Civil Appeals also held that reversible error was presented by two assignments urged by the defendant in error in the Court of Civil Appeals, one being that the court erred in failing to define "new and independent cause," used as a part of the definition of proximate cause, and the other that there was error in placing the burden of proof upon defendant in error to show that the collision was not the result of an unavoidable accident. The cases cited by the Court of Civil Appeals sustain its holding that each of these assignments presents reversible error.

We recommend that the judgments of the trial court and the Court of Civil Appeals be reversed and the cause remanded for another trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.