**TEXAS–LOUISIANA POWER CO. v. BIHL et ux.**

No. 2591.

Court of Civil Appeals of Texas. El Paso.
Nov. 5, 1931.

Rehearing Denied Nov. 25, 1931.

It was averred that the appellant, Texas-Louisiana Power Company, was a private corporation, operating the electric light and power plant at Fort Stockton, Pecos county, Tex., and on the 13th day of May, A. D. 1929, it owned and maintained an electric light pole situate in close proximity to the home of the plaintiff; that this pole was some fifteen to twenty feet in height with a transformer supported thereon at or near the top; that the wires attached to the top of this electric light pole carried electricity of high power and voltage, dangerous to any one who came in contact therewith or in too close proximity thereto; that the pole was maintained and equipped with a hanging wire fastened at or near the top and extended to the ground which could be easily grasped and used in scaling the pole; that the electric light pole and equipment as maintained constituted an attractive nuisance calculated to interest children and boys and carried an implied invitation to the immature child to climb the same and to attempt to explore and examine the transformer and wires located thereon; that on the 13th day of May, A. D. 1929, the deceased, Eugene Bihl, a boy of about eleven years of age, climbed the electric light pole in question, without appreciating or understanding the danger incident to his situation, and came in contact with the exposed wires running into or out of, or connected with the transformer located on the pole; that his death was the direct and proximate result of such contact; that the defendant was negligent in various acts.

The case was submitted upon special issues. With the answers returned, they read:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the pole on which Eugene Bihl was injured was dangerous to children of immature years, such as he, because of the negligence, if any, of the defendant in permitting, if you find that it did so permit, a down drop wire to remain thereon so loosely fastened at intervals along down the pole as to make climbing the pole a simple and easy matter? Answer yes or no.

"Answer: Yes.

"Special Issue No. 2: Do you find from a preponderance of the evidence that the pole on which Eugene Bihl was injured was dangerous to children of immature years, such as he, because of the negligence, if any, of the defendant in not properly protecting or insulating, if you do find that it did not so properly protect or insulate the wires located thereon so as to prevent the electric current from injuring anyone coming in contact therewith? Answer yes or no.

"Answer: Yes.

"Special Issue No. 3: Do you find from a preponderance of the evidence that the pole

Hart Johnson, of Fort Stockton, and Leachman, Gardere & Bailey, of Dallas, for appellant.

W. A. Hadden, of Fort Stockton, and Collins, Jackson & Snodgrass, of San Angelo, for appellees.

HIGGINS, J.

Appellee Bihl, suing for himself and in behalf of his wife, brought this suit against appellant to recover damages for the alleged negligent killing of their son Eugene Bihl.

on which Eugene Bihl was injured was dangerous to children of immature years, such as he, because of the negligence, if any, of the defendant in not providing a guard or barrier to prevent or deter children, such as he, from climbing the same? Answer yes or no.

"Answer: Yes.

"Special Issue No. 4: Do you find from a preponderance of the evidence that the pole on which Eugene Bihl was injured was dangerous to children of immature years, such as he, because of the negligence, if any, of the defendant in failing to erect and maintain warning signs or notices advising persons or children, such as Eugene Bihl, of the danger incident to climbing the pole? Answer yes or no.

"Answer: Yes.

"Special Issue No. 5: Do you find from a preponderance of the evidence that the pole as equipped and maintained by the defendant at the time and place Eugene Bihl was injured and killed, was unusually attractive for climbing to children of immature years, such as Eugene Bihl? Answer yes or no.

"Answer: Yes.

"Special Issue No. 6: Do you find from a preponderance of the evidence that the unusual attractiveness of the pole for climbing caused or induced Eugene Bihl to climb it? Answer yes or no.

"Answer: Yes.

"Special Issue No. 7: Do you find from a preponderance of the evidence that the defendant was guilty of negligence in maintaining such pole in the condition in which you have found it to be in answer to Special Issues 1, 2, 3 and 4, or either of them? Answer yes or no.

"Answer: Yes.

"Special Issue No. 8: Do you find from a preponderance of the evidence that such negligence of the defendant so found in answer to the preceding question, the proximate cause for the injury and death of Eugene Bihl? Answer yes or no.

"Answer: Yes.

"Special Issue No. 9: Do you find from a preponderance of the evidence that the deceased, Eugene Bihl, was guilty of negligence as that term is hereinafter defined to you in the way and manner in which he came in contact with the two primary wires on the time and occasion complained of? Answer yes or no.

"Answer: No.

"Special Issue No. 10: Do you find from a preponderance of the evidence that such negligence, if any you have so found, in answer to the foregoing special issue No. 9, was a proximate or contributing cause to the accident and injuries complained of? Answer yes or no.

"Answer: No.

"If you have answered either of the first four issues 'yes,' and also answered Issues 5, 6 and 7 'yes,' then you need not answer the following; otherwise you will answer the following:

"Special Issue No. 11: Was the death of Eugene Bihl the direct and proximate result of an unavoidable accident? Answer yes or no.

"Answer: ———

"Special Issue No. 12: What sum do you find from a preponderance of the evidence will compensate the plaintiff, Dan Bihl and his wife, Julia Bihl, the parents of Eugene Bihl, for the actual pecuniary loss suffered by them as the direct and proximate result of the death of their child, Eugene Bihl. Answer in dollars and cents.

"Answer: $9,000.00.

"Special Issue No. 13: How much of such damages should be apportioned to the father, Dan Bihl, and how much to the mother, Julia Bihl? You will answer this question by stating how much, in figures, to each parent.

"Answer:

"To Dan Bihl $4,000.00.

"To Julia Bihl $5,000.00."

Upon these findings judgment was rendered against the defendant from which it appeals.

The pole in question was at the northeast corner of Bihl's home next to the outer edge of a concrete sidewalk in front of his property. It was about sixty feet from the northeast corner of the house. The sidewalk and pole were both within appellees' property line. The pole was placed there by appellant about December, 1927. It was an ordinary timber electric light pole approximately six inches in diameter at the top and approximately twelve inches in diameter at its ground point, and was nineteen feet and eleven inches above the ground. It was equipped with a cross-arm about twelve inches below the top of the pole. A short distance below this cross-arm was another cross-arm. This lower cross-arm supported the transformer. It was the same or similar kind of pole as was in use in Fort Stockton, Tex., on or about the date of the accident, and a long time prior thereto, and was the same or similar kind of pole in use throughout the various towns in West Texas on or about the 13th day of May, A. D. 1929, and for a long time prior thereto, for the purpose of carrying electric light current, and also the same type or kind of pole in common use throughout various states in the United States for the purpose of carrying electric light current.

Eugene Bihl's conduct and actions prior to the time he reached the top of the pole were observed by his younger sister, Elizabeth Bihl, and by her playmate, Joe Ella Bryson.

The sister testified:

"I was by this tree (indicating on picture) in the shade. This is the pole he climbed. I was sitting by the tree, right over there, playing jacks. There was just the width of the sidewalk between me and the pole. Maybe a little closer to the pole. That would be four or five feet. When Stephen Eugene started to climb the pole—before that—he asked us if he could play jacks with us, and I told him he could not play hard games like we could and he said 'all right,' and he went in the house and came back in a little while and got up on the pole—I don't know how he got up—and he said, 'Look, Betsy, I am a little bit higher than you are.' He was about half way up the pole when he said that. No, I didn't notice how he was holding on to the pole. No, he was not barefooted. He had on tennis shoes. I don't remember whether he was wearing stockings or not. After he made that remark to me I said, 'You better get down, you might fall' and he said, 'No, I won't fall.' I didn't think so, because he climbed so many trees. He said, 'I am getting a little bit higher' until he got up to the top and then he said 'Look at the post, it is shaking' and he touched this wire.

"No, I did not tell him that he might get a shock if he went up there. As to where he got before he touched the wire,—like this was the pole, his legs were hanging down this way and he was sitting astride this (indicating on picture). He touched the two top wires shown in the little black knobs in picture No. 3. Then he fell off. I just told him to come down one time. I had never seen him climb that pole before that. I had never seen any of my little friends climb it."

Her little companion testified to the same effect. .

The testimony shows that the ground or drop line was attached to the pole by staples about eighteen inches apart; the line had some slack in it so that it was a comparatively easy task for a venturesome climbing boy to ascend the pole as the deceased did; that is, by holding to the line and inserting his feet between the line and post, using the staples as steps. The witness Beeman testified: "The wire was coming down the pole. It was loose and pulled out from the pole. It was pulled out from the pole at more than one place. This picture seems to be about as I remember the wire. I judge 12 or 15 of them were pulled out like that, practically all the way. As I remember it, it was loose all the way up. There were staples in places and the wire was bulged out. The boy had placed his foot between the wire and the pole and climbed it. I guess that could have made that bulge out."

A few days after the tragedy appellant repaired the drop by cutting out about twenty-seven inches and stapling it firmly to the post.

It was shown by testimony of appellee and his wife that the boy was given to climbing, though it does not appear that he had ever before attempted to ascend this or any other electric light pole.

By its first five propositions appellant asserts the petition is subject to general demurrer, the evidence insufficient to support the judgment, and a peremptory charge in its favor should have been given.

Appellant's counsel have at length reviewed the attractive nuisance doctrine, and the authorities upon the subject, in typical cases where the injured person was upon premises owned by the defendant and was relieved of the consequences attaching to injured trespassers upon the theory that something placed upon the premises by the defendant was so alluring and enticing to children of tender age that it was regarded as amounting to an implied invitation to such children to enter upon the premises or use the dangerous instrumentality. While this view is not accepted in some jurisdictions, it is well established in this state and a general review of the doctrine now by this court would be profitless. The courts of this state have gone quite far in upholding recoveries based upon the doctrine:

It has been held to apply to oil well machinery and equipment, Johnson v. Supply Co. (Tex. Civ. App.) 183 S. W. 31; to an open well in an inclosed lot, Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; to an electric light tower, McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105; to a hoisting derrick, Duron v. Beaumont Iron Works (Tex. Com. App.) 7 S.W.(2d) 867; to ice manufacturing machinery, Orient Consolidated Pure Ice Co. v. Edmundson (Tex. Civ. App.) 140 S. W. 124; to oil mill tools, Stamford Oil Mill Co. v. Barnes, 103 Tex. 413, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; to a cache for explosives, Little v. James McCord Co. (Tex. Civ. App.) 151 S. W. 835; and to a pile of ties partially located on the sidewalk, Charles v. El Paso Electric R. Co. (Tex. Com. App.) 254 S. W. 1094.

This case is different from the usual one of this nature, in that the child was not wrongfully upon premises of the defendant. He was at home where he should have been. His father's yard was unfenced and the sidewalk and pole situate within the father's property line just a short distance from the house. Appellee's yard was a favorite gathering place for the children of the neighborhood and for all practical purposes the pole was in the children's playground.

As applied to a situation of this kind in 45 C. J. 769, it is said:

"Where Trespass on Realty Not Involved: Although there may be a trespass on personal property which may relieve the owner of liability for injury to the trespasser, the attractive nuisance doctrine applies to dangerous and attractive instrumentalities and appliances placed and maintained by the owner at places readily accessible to children of tender years seeking recreation and amusement, and who are not trespassers on realty, and is said to have special merit as so applied. Accordingly, there may be liability for an injury caused by something attractive to children which has been placed in a public street or alley, or on a public wharf, although the thing causing the injury might not possess the qualities of unusual attractiveness which would be necessary to impose liability in case the thing in question were situated entirely upon the premises of the person sought to be charged. So also, where one had placed on the premises of a third person something unusually attractive to children, he may be held liable for an injury to a child caused by such thing, although the presence of such thing was not what attracted the child onto the premises.

"Even where the attractive nuisance doctrine is not recognized with respect to children trespassing on realty, it is considered that one who places in a public street, or on property which he does not own, an instrumentality or agency which is dangerous and attractive to children, without properly safeguarding it, is liable for an injury to a child caused thereby."

In Thompson on Negligence (2d Ed.) § 1030, it is said: "We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: 1. That where the owner or occupier of grounds brings or artificially creates something thereon which from its nature is especially attractive to children, and which at the same time is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. 2. That although the dangerous thing may not be what is termed an attractive nuisance,— that is to say, may not have an especial attraction for children by reason of their childish instincts,—yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them."

In the Charles Case (Tex. Com. App.) 254 S. W. 1094, 1095, a boy was injured while playing upon a pile of cross-ties which the defendant had stacked partly on a vacant lot and partly on the sidewalk. In that case it was said:

"It is contended by counsel for the company, and held by the Court of Civil Appeals, [234 S. W. 695] that this child was a trespasser, as a matter of law, and is without a remedy in this case. We do not think so. This child had a perfect right to be on the sidewalk, and it does not matter from what angle he approached it, or whether he came across a vacant lot to reach it or not. The jury might well have found that the company should have reasonably anticipated the presence of children on the sidewalk and realized that a stack of ties, when placed most temptingly in their very pathway, might prove an attractive playground to children seven years of age. Construction companies must be given the right to use streets and sidewalks in their work, but they should also be required, while so partially in the streets or upon the sidewalks, to exercise ordinary care for the safety of those who also have a right in the streets and upon the sidewalks. This statement includes children of tender years, and ordinary care must be exercised in placing things there which might be calculated to attract children along the sidewalk. A grown person, having ordinary intelligence, would not need any protection from the results of climbing a pile of ties to play thereon. A company would not expect such conduct. But we are not prepared to admit that a child of seven years should be held guilty of contributory negligence, as a matter of law, because it happens to play upon a pile of ties, accessible to it as was the pile of ties in the instant case. As so many of the courts have held, the decisions have gone far enough when many of them hold that, on one's own premises, most things can be constructed by the owner without any thought of injury to children who may trespass upon such premises. The rule should not be extended to structures erected, in part or wholly, upon public sidewalks and streets. A child might realize that it ought not to go inside of another man's inclosure and play with his property, when that same child might feel at perfect liberty to play upon property located upon the sidewalk where it would naturally be expected to be walking or playing. * * *

"Summing it up briefly, we think the construction company should have contemplated that this stack of ties on a public sidewalk in the residential section of a city might attract a seven year old boy to such an extent as to cause him to climb thereon and play for a while. Furthermore, that so con-

templating it, the company should have stacked the ties in a reasonably safe manner for such a usage of them. We think there is evidence to warrant a jury in finding the company liable in this case. We feel that the cause should be submitted to a jury."

The climbing proclivity of many boys is a matter of common knowledge, and appellant should reasonably have anticipated that boys playing in appellees' yard would attempt to ascend the pole if it could be easily done. The loosely stapled ground wire afforded an easy means of so doing, and we think appellant was plainly negligent for the wire could have been easily attached to the pole so as to prevent its use as it was used by the deceased child. This case is clearly within the rule announced in the authorities cited above.

In this connection, see also McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105, and Johns v. Fort Worth P. & L. Co. (Tex. Civ. App.) 30 S.W.(2d) 549, and writ refused.

■ The twenty-first proposition asserts it is uncontradicted that defendant could not have reasonably anticipated that its twenty-foot pole would be climbed by a boy and the wires at the top grasped by him.

The climbing propensity of many young boys is a matter of common knowledge. This pole was practically in a childrens' playground with a ground wire leading from the top to the ground so loosely attached to the post by staples that the pole could be easily ascended by a climbing boy. Near the top was what is called a transformer, a bucket-shaped affair. Under such circumstances the defendant could reasonably have anticipated just what did happen in this case.

Contributory negligence was pleaded in general language as follows:

"Further answering, if such be necessary, this defendant comes and says that at the time and on the occasion in question Eugene Bihl was guilty of negligence which proximately caused or contributed to cause the accident and injuries complained of.

"Further answering, if such be necessary, this defendant comes and says that at the time and on the occasion in question, the plaintiff was guilty of negligence which proximately caused or contributed to cause the accident and death of the deceased, Eugene Bihl."

No issue was submitted as to the negligence of the father.

Accompanied by an instruction as to the degree of care required of him, the issue of the deceased's negligence was submitted as follows: "No. 9. Do you find from a preponderance of the evidence that the deceased, Eugene Bihl, was guilty of negligence as that term is hereinafter defined to you in the way

and manner in which he came in contact with the two primary wires on the time and occasion complained of?" This was answered, "No."

The sixth proposition asserts that plaintiff was guilty of contributory negligence as a matter of law, and in other propositions complaint is made of the refusal to submit requested issues which read:

No. 5. "Do you find from a preponderance of the evidence that the deceased, Eugene Bihl, had sufficient intelligence and ability to understand the danger of climbing the pole in question at the time and on the occasion complained of? Answer 'Yes' or 'No.'

"You are instructed by the Court, in regard to the above issue, that the burden of proof is on the plaintiff to show by a preponderance of the evidence that the said Eugene Bihl did not have sufficient intelligence to understand the dangers incident to climbing said pole, and unless you believe that the preponderance of the evidence would establish that fact, you will answer the above issue in the affirmative."

No. 2. "(a) Do you find from a preponderance of the evidence that the deceased, Eugene Bihl, failed to keep a proper lookout for his own safety at the time and on the occasion complained of? Answer Yes or No.

"(b) Do you find from a preponderance of the evidence that such failure, if any you have so found, is negligence as that term has been hereinbefore defined to you? Answer Yes or No.

"(c) Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate or contributing cause to the accident and injuries complained of? Answer Yes or No."

No. 6. "(a) Do you find from a preponderance of the evidence that the plaintiff, Dan Bihl, failed to keep a proper lookout for the safety of his son immediately prior to, and at the time, and on the occasion complained of? Answer Yes or No.

"(b) Do you find from a preponderance of the evidence that such failure, if any you have so found, was negligence as that term has been hereinbefore defined to you? Answer Yes or No.

"(c) Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate or contributing cause to the accident and injuries complained of? Answer Yes or No."

No. 7. "(a) Do you find from a preponderance of the evidence that the plaintiff, Dan Bihl, was guilty of negligence, as that term has been hereinbefore defined to you, in failing to instruct his son of the dangers incident to climbing the said pole? Answer Yes or No.

**300**

"(b) Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate or contributing cause of the accident and injuries in question? Answer Yes or No."

It is true the father was well aware of the child's disposition to climb. The father testified: "I never did notice the condition of this pole, with reference to those steps there before, until after he was killed. * * * Prior to the accident I did not notice whether or not that ground wire had been pulled out or had a lot of slack in it. I never paid any attention to it. I have never, myself, seen children climbing up that pole. I instructed my children not to climb anything, poles or trees, and I had cautioned Eugene. I never did instruct him not to climb that pole. I didn't have occasion to, or didn't think so."

It certainly cannot be said the father was guilty of contributory negligence as a matter of law. Nor do we think the evidence raises any issue of negligence as indicated in requested issues 6 and 7.

Issue 6 inquires whether the father "failed to keep a proper lookout for the safety of his son immediately prior to and at the time and on the occasion complained of."

The father was not at home, but was at his place of business, and he could not at all times keep the child under his watchful eye, as the issue would seem to indicate was expected of him.

Nor could it be expected of him that he should have instructed the boy "of the danger incident to the climbing of" this particular pole as indicated in issue 7. He had cautioned the boy and instructed him not to climb any poles, and there is no evidence of any fact which imposed upon the father the duty of giving any special instructions with reference to the danger incident to the climbing of this particular pole.

The general plea of the father's contributory negligence was not excepted to and was sufficient to admit evidence of contributory negligence on his part. Western Union Tel. Co. v. Jeanes, 88 Tex. 230, 31 S. W. 186. If the evidence raised the issue, it should have been submitted upon proper request.

We incline to the view that the evidence raises no such issue, but, if it does, it is not in respect to the particulars indicated in requested issues 6 and 7, and such issues do not properly submit the father's negligence, if any.

The refusal of the requested issues as to the father's negligence, for this reason, presents no error.

As to subdivision (a) of No. 7, it may be further observed that it was objectionable in that it called for a finding upon two issues in this: Whether he failed to instruct the child and if such failure was negligence. This multifarious form of submission is improper.

Nor does the refusal to submit issues 5 and 2 present any error.

The court in issue 9 submitted in broad and very general form the issue of contributory negligence upon the part of deceased. No exception was taken thereto except with respect to the explanation given in connection therewith as to the degree of care required of a child of the age of deceased.

Requested issue 5 is evidentiary merely upon the issue of contributory negligence. For that reason it was properly refused, and the instruction requested in connection therewith was objectionable as being in the nature of a general charge instructing the jury as to the law arising upon the facts. Connellee v. Nees (Tex. Com. App.) 266 S. W. 502.

Requested issue No. 2 inquired whether the deceased kept a proper lookout for himself at the time and on the occasion complained of. This was but a general submission of the issue of negligence on the part of the deceased which was submitted in better general form by the court in issue No. 9. The requested issue would have submitted the issue but poorly, for it inquires as to a "proper lookout" which it seems to us is obscure, indefinite in meaning, and calculated to confuse the jury.

To the first seven issues, except the sixth, it is objected that they are multifarious.

The special issue statute (article 2189) requires that "special issues shall be submitted distinctly and separately." The objection made is well taken, except possibly as to issue 5. The issues may be subject to other objections made thereto; but they need not be considered, as the error indicated is reversible. It has been often so held.

As to issue No. 6 it is objected there was no evidence to support it because all the evidence shows that the child climbed the pole because of a desire to attract the attention of the two little girls. This objection is overruled, for such is not the state of the evidence.

In conjunction with special issue No. 11, and just preceding the issue, the court, in his charge, gave the following instruction: "If you have answered either the first four issues 'Yes' and also answered issues five, six and seven 'Yes' then you need not answer the following; otherwise you will answer the following."

The jury having answered the first seven issues, "Yes," under the court's instruction did not answer special issue No. 11.

It is objected that the burden of proof was not imposed upon the plaintiff as it should

have been. The criticism is well taken. Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521; Texas Electric R. Co. v. Scott (Tex. Civ. App.) 21 S.W.(2d) 24; Scott v. Texas Elec. Railway Co. (Tex. Com. App.) 32 S.W.(2d) 641.

But no objection was taken to the conditional submission of the issue and the error was harmless, for the issue was not answered.

 The court's definition of "ordinary care" was as follows: " 'Ordinary Care' as used in this charge, means such care as an ordinarily prudent and cautious person would exercise under the same or similar circumstances."

It is objected to this definition that incorporating the words "and cautious" imposed too great a degree of care upon appellant. The criticism is hypercritical and unsubstantial, but the words are unnecessary and upon retrial may well be omitted.

The court defined "proximate cause" as follows: " 'Proximate cause' as used in this charge, means the moving and efficient cause, without which the injury in question would not have happened. An act or omission becomes the proximate cause of an injury whenever such injury is the natural and probable consequence of the act or omission in question, which ought to have been foreseen by a person of ordinary care and prudence in the light of the attending circumstances. It need not be the sole cause. It must be a concurring cause which contributed to the production of the result in question and but for which said result would not have occurred."

Complaint is made of this definition because "it is misleading, ambiguous and apt to confuse the jury, is not a proper nor approved definition; it does not contain the elements of unbroken and continuous sequence. It is more onerous than the law requires,—does not correctly include new and independent cause, nor a definition thereof; because it does not inform the jury that there may be more than one proximate cause; because the words used in the definition, being as follows: 'a concurring cause,' is a legal term, or legal phrase, and is not clear or understandable to a jury and is subject to definition and the same is not defined."

There is no suggestion in the evidence of any new and independent cause to break the causal connection between the alleged negligent acts and the death of the deceased. Hence it was not necessary to make any reference to a possible new and independent cause. We do not understand Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, as holding that no definition of proximate cause is correct which omits reference to new and independent cause. We are not disposed to extend the ruling in that cause to the extent here insisted upon.

The twenty-second proposition asserts that the plaintiff's petition was insufficient to authorize recovery of anything except the value of the minor's services up to the time he attained his majority.

This is well taken. The court's charge authorized recovery for "an amount as if paid now, would compensate them for the pecuniary loss, if any, of the minor, Eugene Bihl's services, if any, from the date of his death until the time he would have arrived at the age of 21 years, and in addition thereto, such an amount, if paid now, would compensate for such pecuniary contribution, if any. as they might reasonably expect to receive from their said son, during the remainder of his life after reaching 21 years of age."

The pleadings are insufficient to authorize recovery for any contributions, which might be made after the age of 21.

Other questions relate to alleged misconduct of the jurors; that one juror was biased and prejudiced; and improper argument of counsel. These need not be considered, as they should not recur on retrial.

Reversed and remanded.