**LEAP et al. v. BRAZIEL.**

No. 9827.

Court of Civil Appeals of Texas.   San Antonio.

March 25, 1936.

Rehearing Denied May 6, 1936.

R. H. Mercer, of San Antonio, for appellant.

Jones & Kirkham and John J. Pichinson, all of Corpus Christi, for appellee.

SMITH, Chief Justice.

Appellee, Cindia Hughes Braziel, brought this action against appellant Albert W. Leap for damages for personal injuries sustained by her in a collision between a "Model A Ford coupé," driven by her, and a "Buick Sedan taxicab," driven by one Mike Germain, an authorized employee of appellant.

The accident occurred at about 2 o'clock on the afternoon of December 19, 1934, at the intersection of Port avenue and Sam Rankin street, in the city of Corpus Christi. Appellee was driving west on Port avenue, which is 40 feet wide, while Germain was driving north on Sam Rankin street, which was 26 feet wide. The collision resulted in upsetting appellee's car and throwing it into a 4-foot ditch adjacent to Port avenue, resulting in injuries to its driver.

The case was submitted to a jury upon something like seventy-five special issues, including unavoidable accident, discovered peril, ten issues of negligence charged to appellant, fifteen issues of negligence charged to appellee, and the appropriate conventional subsidiary issues. The jury found the accident was not unavoidable against appellant upon discovered peril and all the ten specific acts of negligence, and in favor of appellee upon all the fifteen acts charged against her. There was sufficient evidence to support all those findings.

On the occasion of the collision, appellee was on her way home from a shopping errand, traveling at a rate of speed variously estimated at from 15 to 30 miles per hour, while the taxi driver was carrying two passengers, a "mariner" and a ship steward, to their ship, which was about to sail from the port of Corpus Christi. The evidence was overwhelming that the taxi was being driven at the rate of 55 to 60 miles per hour at the time of the collision, which occurred near the center of the street intersection. The taxi driver admitted that he saw appellee's car approaching when it was at least 40 feet away, and realized that she did not intend to slow down. He, alone of many witnesses, testified that he approached the crossing at the rate of 25 or 30 miles per hour, slowed down to 5 when he entered the intersection and discovered appellee's car 40 feet away, and continued at that rate, with his brakes on, until he ran into appellee's car, admitting, the while, that he could at any time have stopped his car within a space of 5 feet. This testimony, if believeable under the physical facts and circumstances, was sufficient to convict the driver of discovered peril. That theory was amply supported by other testimony, as well. The testimony was overwhelming that appellant's driver failed to keep a proper lookout; that as he entered Port avenue, already occupied by appellee, at a speed of 50 to 60 miles per hour, he was looking back towards his passengers, asking them personal questions, and continued to do so, until one of his passengers, alarmed by the imminence of the collision, shouted to him to "Watch it!" Not until then did he begin to look out. He then swung his car to the right, then sharply to the left, and by that maneuver collided with the other car. The evidence warrants the conclusion that, even at that last moment, and in the exercise of due care, he could have avoided the accident by using his brakes, and keeping a straight course, or by continuing to swerve to the right. The evidence is also overwhelming that he was traveling on the left side of his street, whereas, it is easily inferable that had he approached and continued on the right side of his street, the collision would have been avoided, in spite of his high speed, and failure to keep a lookout. The jury properly convicted the driver on all those counts, as well as upon others.

The trial judge defined "proximate cause," as applying to the twenty-five or more issues of specific negligence submitted as to both parties, as follows:

"By the term 'proximate cause' as used in this charge, is meant a cause which immediately precedes and directly produces the injuries, if any, complained of, and without which the injuries would not have happened, and which injuries might reasonably have been anticipated by an ordinarily prudent person as the natural and probable consequence of such cause."

In his first proposition appellant attacks the clause, "a cause which immediately precedes and directly produces the injuries," upon the ground that therein the jury is informed that "the words are used in their usual and ordinary sense, which is erroneous, since if that were true 'proximate cause' would not be a legal term requiring a definition or explanation of its meaning."

The objection, constituting appellant's first proposition, when analyzed, amounts to no more than saying that the quoted clause was erroneous because it permitted the jury to give the words used their usual and ordinary meaning; that the charge, or that clause therein, should have been couched in language requiring a definition or explanation of its meaning. The complaint is hypercritical, to say the least of it. The fact that the clause was couched in language that the jury could understand without further explanation is not, per se, reversible error. The language used was so plain and simple that any person of ordinary intelligence could understand it as written. Now, if the court had interpolated the phrases "new and independent causes," "intervening causes," and the like, an explanation or definition of those phrases would have been proper, and perhaps essential, under the authorities. But those phrases were not used. Only the plain, simple language quoted was used in the clause objected to, and appellant's proposition will be overruled.

The second proposition and principal objection to the clause, in the definition of proximate cause, "a cause which immediately precedes and directly produces the injuries," is, in effect, that the definition is erroneous "because a cause may be a proximate cause which neither immediately precedes, nor directly produces, the injury," wherefore "the charge was clearly misleading to the jury." This objection is encompassed by appellant in its contention that the definition was too restrictive, and confined the jury to a consideration of, only, causes which immediately precede, and directly produce, injuries, and excludes from the jury's consideration intervening and new and independent causes or agencies. There is no merit in this contention, for several reasons, at least one of which is quite obvious.

■ In the first place, we are of the opinion that there is no evidence from which the jury could have inferred, or even surmised, any intervening agency or cause which could possibly have interrupted the sequence of the several acts which led directly to the injuries, as found by the jury. In such case the failure to interpolate new, independent, or intervening causes as elements of the definition of proximate cause is not only not error, but is improper, because calculated to confuse the jury. Greer v. Thaman (Tex. Com.App.) 55 S.W.(2d) 519; Butler v. Herring (Tex.Civ.App.) 34 S.W.(2d) 307; Phoenix Refining Company v. Tips (Tex. Com.App.) 81 S.W.(2d) 60; Texas-Louisiana Power Co. v. Bihl (Tex.Civ.App.) 43 S.W.(2d) 294, reversed on other grounds (Tex.Com.App.) 66 S.W.(2d) 672; Texas & P. R. Co. v. Bufkin (Tex.Civ.App.) 46 S.W.(2d) 714; Panhandle & S. F. R. Co. v. Miller. (Tex.Civ.App.) 64 S.W.(2d) 1076; Texas & N. O. R. Co. v. Robinson (Tex.Civ.App.) 57 S.W.(2d) 938; Texas & P. R. Co. v. Short (Tex.Civ.App.) 62 S.W.(2d) 995.

■ Again, if the charge was unduly restrictive, as appellant contends, and excluded consideration of new, independent, or intervening causes, and limited consideration to direct causes immediately preceding the issues of appellant's negligence, the charge was highly beneficial to appellant, rather than harmful to him, and, rather than complain thereat, he should be grateful for that restriction. Luckel v. De Vor (Tex.Civ. App.) 17 S.W.(2d) 1097; Wichita Falls, R. & F. W. R. Co. v. Crawford (Tex.Civ. App.) 19 S.W.(2d) 166; Galbraith-Foxworth Lumber Co. v. Gerneth (Tex.Civ. App.) 66 S.W.(2d) 471; Stepp v. Texas & P. R. Co. (Tex.Civ.App.) 20 S.W.(2d) 324, 325.

■ Of course, appellant's complaint is, rather, that the charge had the effect of restricting the jury's range of consideration in passing upon proximate cause as applied to the issues of contributory negligence on the part of appellee, of which there were fifteen. But the jury never did reach, and was therefore never called upon to consider, the question of proxi-

mate cause, in determining the results of appellee's conduct. For the jury found, in every instance submitted to them upon the subject, that appellee was not guilty of negligence, and the question of proximate cause passed out of the case, so far as it applied to appellee's acts. We overrule appellant's second proposition.

In view of the foregoing holding that the court's definition of proximate cause did not constitute reversible error when tested by appellant's propositions, we conclude that the appeal is properly controlled, both by the jury's finding upon the issue of appellant's failure to keep a proper lookout, and the finding upon discovered peril. Both findings were supported by ample testimony. Each finding is sufficient to support the judgment, appellee having been acquitted of any negligence.

It does not appear that there was any objection to the court's charge upon the issue of the failure of appellant's driver to keep a proper lookout, and the jury's finding thereon is not assailed by appellant in this appeal.

On the question of discovered peril, appellant objects to the form of the special issue submitted, and contends that the issue was supported by neither the pleadings nor evidence. We conclude, and so hold, that discovered peril was sufficiently pleaded as against the general demurrer, and that the jury's finding against appellant upon that issue was supported by the testimony.

■ The issue of discovered peril was submitted as follows:

"(a) Do you find from a preponderance of the evidence that the operator of said taxi actually discovered the perilous position of the plaintiff, if she were in a perilous position, at the time she started to cross said intersection before the collision and realized that she could not extricate herself therefrom and in time that he, the said operator of said taxi, could have, by the exercise of ordinary care on his part in the use of all the means then at hand, consistent with his own safety and the safety of the taxi he was driving and its passengers, avoided the collision?"

Appellant propounds, and improperly groups, five different propositions against the form of the issue. The principal objections are that the issue is in the form of a general charge, and is multifarious, in that it embraces all the several elements of discovered peril, whereas, it is contended, those elements ought to be segregated and submitted in separate issues. We are of the opinion that the issue was properly submitted. The several elements of discovered peril are so related and interdependent that they should be connected into one in order to form the ultimate issue. In fact, to submit them separately would be to submerge the ultimate issue in a grotesque House-that-Jack-Built sort of structure that should have no place in the trial of causes. We overrule appellant's propositions relating to discovered peril.

■ Appellant advances numerous other contentions in his brief, but they all relate to rulings of the trial court concerning specific issues entirely disconnected from the matters hereinabove discussed and decided, and have no bearing thereon. If all of appellant's objections to those rulings were sustained in this appeal, they could not affect the judgment, which is efficiently supported by the jury findings upon either, and both, the issues of discovered peril and failure to keep a lookout, concerning which no error is shown. In short, the judgment must be affirmed upon those two findings, regardless of the rulings and alleged errors upon other issues. The judgment in favor of appellee against appellant is therefore affirmed.

■ Maryland Casualty Company was originally impleaded as a party defendant in the suit, it having issued its policy insuring appellant from loss occasioned by injuries inflicted upon others in the operation of the taxicab in question. The casualty company, however, was properly dismissed out of the suit upon its plea in abatement. The company, nevertheless and exclusively, conducted, controlled, and managed appellant's defense throughout the proceedings, through its own counsel, and at its own expense. At the conclusion of the trial, and upon entry of the judgment here appealed from, appellee filed her motion for judgment in her favor "over" against the casualty company, for the sum of $5,000, the amount of said policy, for the following reasons:

"1. Upon the verdict of the jury rendered in this cause, which was submitted upon special issues and the answers of the jury to all of said issues being favorably to this plaintiff.

"2. To render judgment over against Maryland Casualty Company, for the following reasons, to-wit: Because the Mary-

land Casualty Company carried the policy of liability insurance covering the legal liability of the defendant, Albert W. Leap, at the time of the collision involved and determined in the trial of this cause, and that said Maryland Casualty Company was made a party to this proceeding and upon a plea in abatement being filed in the name of Albert W. Leap by the Attorneys for Albert W. Leap, R. H. Mercer and Hubbard, Dyer & Sorrell; said plea in abatement was in all things sustained; that the said Maryland Casualty Company employed the attorneys R. H. Mercer and Hubbard, Dyer & Sorrell to defend this suit in the name of and on behalf of the defendant Albert W. Leap; that said attorneys so employed examined the witnesses in this cause, cross-examined the witnesses, argued the case to the jury, and participated in the trial of said cause in the name of Albert W. Leap as fully and to all intents and purposes as if it were in fact a party defendant and is concluded by said judgment; that the plaintiff herein has secured a verdict of the jury favorable to her and in order to avoid a multiplicity of suits and contracted and continued litigation, the plaintiff moves the court at the time it renders judgment herein to enter judgment against the said Albert W. Leap for the amount of the verdict of the jury and over against the Maryland Casualty Company for Five Thousand Dollars ($5,000.-00), together with costs of suit, and the plaintiff prays the court that he will hear evidence on this motion in support of the facts herein alleged, and that the same be heard at the time of the hearing of the motion for new trial, if any is filed, and for such other relief, general and special, as she may show herself entitled to receive."

The court heard evidence upon the motion, and overruled it, and appellee has cross-assigned error upon that ruling.

Upon the hearing of the motion for judgment against the casualty company, the policy in question, conceded to have been in force when the accident occurred, was introduced, as was testimony showing that the company, through its attorney, and in the name of appellant, had actually conducted and controlled and managed the defense of the case, up to and including the entry of the judgment appealed from. Its said attorney also filed motion for new trial, and has conducted the entire proceedings on the appeal.

The policy in question insured appellant against "loss from liability imposed by law upon (appellant) * * * on account of bodily injury * * * accidentally sustained * * * by any person * * * by reason of the ownership, maintenance or use of" the taxicab in question, to the amount of $5,000 for each person so injured. It was further provided:

"II. Further, the Company will investigate all accidents and claims covered hereunder, and defend in the name and on behalf of the Assured all suits thereon, even if groundless, of which notices are given to it as hereinafter required; and will pay, irrespective of the limit of liability provided for in Insuring Agreement I, the expense (including as a part thereof Court costs, all premiums on release-of-attachment and/or appeal bonds required in any such proceedings, and all interest accruing after entry of a judgment for any part of which the Company is liable hereunder and up to the date of payment, tender, or deposit in Court, by the Company of its share of such judgment) incurred by it in such investigation and defense; but the Company reserves the right to settle any such claim or suit.

"III. The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries or death sustained or loss occasioned within the provisions of this Policy; and the prepayment of any judgment that may be recovered against the Assured upon any claim covered by this Policy is not a condition precedent to any right of action against the Company upon this Policy but the Company is bound to the extent of its liability under this Policy to pay and satisfy such judgment; and an action may be maintained upon such judgment by the injured person, or his or her heirs or personal representatives, as the case may be, to enforce the liability of the Company as in this Policy set forth and limited. * * *

"A. Immediate written notice of any accident, like notice of any claim, and like notice of any suit resulting therefrom, with every summons or other process, must be forwarded to the Home Office of the Company, or to its authorized agent, provided, however, that failure to give such immediate notice shall not invalidate any claim made by the Assured, if it shall be shown not to have been reasonably possible to give

such notice immediately and that notice was given as soon as was reasonably possible. Whenever requested by the Company, the Assured shall aid in securing information, evidence, and the attendance of witnesses; and shall at all times render to the Company all reasonable co-operation and assistance.

"B. No action shall lie against the Company to recover upon any claim or for any loss under Insuring Agreement III unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the Assured after trial of the issue or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years after such final judgment or agreement.

"C. The Company is not responsible for any settlements made nor for any expense incurred by the Assured unless such settlements or expenditures are first specifically authorized in writing by the Company, except that the Assured may provide at the time of the accident, at the expense of the Company, such immediate surgical relief as is imperative. * * *

"F. In case of payment of loss and/or expense under this Policy the Company shall be subrogated to all rights of the Assured to the extent of such payment, and the Assured shall execute all requisite papers and shall cooperate with the Company to secure to the Company its rights. * * *

"In consideration of the issuance of the Policy to which this Endorsement is attached, it is understood and agreed that, anything in the Policy to the contrary notwithstanding, no legal action of any kind may be maintained against the Company by the Assured, or any other person, firm, partnership or corporation, to recover for any loss otherwise covered by the Policy until after such loss has been established against the Assured by final judgment.

"It is the intention of this Endorsement to preclude a joinder of the Company as a party defendant in any legal action against the Assured resulting from any accident otherwise covered by the Policy."

It is conceded by the casualty company that the policy was in full effect at the time of the collision, and that the company took charge of and conducted the defense of the case, at its own expense, in the name of, but to the exclusion of participation by, the assured.

■ The liability of the casualty company must depend, primarily, upon the provisions of the contract of insurance between it and the assured, prohibiting injured persons from impleading the company in suits against the assured. Similar contracts are uniformly held not to be unlawful, or against good conscience, or public policy, and have been enforced accordingly. Kuntz v. Spence (Tex.Com.App.) 67 S.W.(2d) 254.

■ But the rule now prevails in this and other jurisdictions that where an insurance company, in pursuance of the terms of such contract, takes charge of and manages and contests the suit against the assured until the recovery of final judgment against him thereon, it thereby becomes so connected with the litigation, by its interest in the result and participation therein, as to be bound by such judgment, and is estopped to deny its liability thereon. 15 R.C.L. §§ 481, 483; American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 37 A.L.R. 633; Universal Automobile Ins. Co. v. Culberson (Tex.Com.App.) 86 S.W.(2d) 727; Cavers v. Sioux, etc., Co. (Tex.Com.App.) 39 S.W.(2d) 862; Automobile Underwriters' Ins. Co. v. Murrah (Tex.Civ.App. writ refused) 40 S.W.(2d) 233.

■ Moreover, under the provisions of the contract here involved, and particularly the stipulations in paragraphs B and III, and in the indorsement thereon, hereinabove quoted, the company's liability upon the judgment obtained herein by appellee, to the extent of $5,000, the limit prescribed in the policy, was automatically fixed by the rendition of that judgment, as was the right of appellee to maintain an action against the company thereon. Under those stipulations, the right of appellee to bring an action against the insurance company is made to ripen upon the rendition of "final judgment" in her favor against the insured. It may be that the term "final judgment," as there used, is subject to construction, in that it is not clear whether the term means a judgment made final by failure to appeal therefrom, or by the exhaustion of the remedy of appeal, or, simply, a judgment evidencing the declaration, by a trial court, of the law upon the facts ascertained. If ambiguity or doubt exists as to that meaning, it should be resolved in such manner as will effectuate the ex-

press purpose of the contract which was to bind the insurer to assume the liability of the assured when that liability is established in favor of persons injured within the contemplation of the contract. We therefore conclude that a reasonable construction of the contract authorized the rendition of judgment over in favor of appellee, after the insurance company's liability for her injury was established by the judgment in her favor against the insured.

The entry of such judgment at that time could not have operated prematurely to require the casualty company to discharge the liability established against it by rendition of the original judgment, for, in the appeal from the latter, the judgment "over" against the casualty company would be automatically suspended pending that appeal, to survive or fall with the original or main judgment.

The liability of the insurance company to appellee was established by the judgment rendered below, in accordance with the provisions of the contract in question. By the express terms of that policy, appellee was given the right of a direct action against the company, upon rendition of that judgment, to which the company could interpose no defense. The liability of the company was fixed and absolute. In such case it would be a vain and futile thing to require appellee to institute and prosecute a new and independent suit to establish that admitted and absolute liability, when precisely the same result could be accomplished by a simple motion for judgment in the original action, without additional expense to any party, and without encumbering the dockets of the courts, and absorbing the processes and time of those courts, already congested with necessary and proper and important litigation.

There seems to be no occasion for further discussion and elaboration of this subject, and no more will be indulged. We hold, therefore, that under the terms of the policy in question, and in obedience to the duty of the courts to avoid and prevent a needless multiplicity of suits and unnecessary litigation, that it was within the province, and was the duty, of the trial court, to sustain appellee's motion and render judgment in favor of appellee over against the casualty company for the sum of $5,000. Cannon Ball Motor Freight Lines v. Grasso (Tex.Civ.App.) 59 S.W. (2d) 337.

Accordingly, the judgment in favor of appellee against appellant will be affirmed, and the judgment of the trial court denying recovery to appellee over against Maryland Casualty Company will be reversed, and judgment will now be rendered that appellee recover of said company the sum of $5,000, with legal interest thereon from date of entry herein, together with all costs in this and the trial court.

Affirmed in part; reversed and rendered in part.