TECHE LINES, INC., *v.* PITTMAN.

(In Banc. Oct. 27, 1941. Suggestion of Error Overruled Nov. 24, 1941.)

[4 So. (2d) 293. No. 34701.]

**Wallace & Greaves**, of Gulfport, for appellant.

**Gex & Gex**, of Bay St. Louis, for appellee.

Argued orally by **R. A. Wallace**, for appellant, and by **Lucien Gex**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On the occasion in question appellee was a paid passenger on one of the public busses of appellant on her way from Slidell, in Louisiana, to Nicholson, in this state. When about half of a mile from her destination the bus driver gave a signal which appellee interpreted as a request of her by the driver that she come forward in readiness to alight. She arose from her seat and as she started forward in the aisle there was an application of the emergency brakes, which so suddenly retarded the progress of the bus that she was thrown from her balance, and fell to her knees and received an injury for which she sued and recovered judgment.

The reason for the application of the emergency brakes and the stated retardation of the progress of the bus was that a hog weighing about seventy-five pounds had suddenly run into the road about seventy-five feet ahead of the bus and, in order to avoid a collision with the hog, it was deemed necessary to use the emergency brakes, in view of the fact that the bus was traveling at the speed of about thirty-five miles per hour on a paved way only

about twenty feet in width. The scene of the accident was upon a highway in a rural section, wherefore the speed of the bus was well within that allowed by law. Further of the facts, and more in detail, will be later stated.

In 10 Am. Jur., pp. 214, 215, it is said: ''The decisions are in accord upon the proposition that a carrier is not liable for injuries to a passenger resulting from the application of the emergency brakes in order to avoid or prevent an imminent danger not otherwise avoidable, and reasonably believed to be attended with more serious consequences than the sudden application of the brakes.'' The text goes on to state, however, that the rule is not available to the carrier if and when the carrier saw, or upon the exercise of the diligence required by the law should have seen, the danger as such in time to have slowed down or stopped without the use of the emergency brakes. We have verified that text by an examination of the decisions, and finding it correct, and in our opinion sound, we determine the present case by applying the rule as stated.

It is a well-known fact, accredited in reported cases, that locomotives of enormous weight and the trains drawn by them have been derailed and wrecked by running over animals. No driver of a passenger bus is to be permitted to speculate or take chances upon whether or not serious consequences to the bus and to all the passengers therein will result from his running over a hog. Instead, he must use his emergency brakes when required, and to the extent reasonably required, to avert such an event, and certainly so when the hog is only seventy-five feet ahead and the bus is running at thirty-five miles per hour, on a pavement only twenty feet wide, as was the case here. This rule has been applied even in the case of the collision of an interurban car with a buzzard. Scott v. Texas Electric R. Co., Tex. Com. App., 32 S. W. (2d) 641. And this duty prevails although a passenger is standing or walking in the aisle, regardless of the rea-

son by which the passenger came to be in the aisle; for the duty of the driver is to all the passengers and not solely to one of them.

When a bus is running thirty-five miles per hour, it is proceeding at the rate of. fifty-one feet per second, and when the animal is seventy-five feet ahead, there is less than one and .one-half seconds to act to avoid striking it. To use the emergency brakes is not only a duty in such a case but so to do in such an emergency must be recognized as an almost instinctive reaction on the part of any driver of skill, experience, and of normal moral impulses. That in the case now before us there was no distinctly excessive application of the brakes is sufficiently demonstrated by the undisputed evidence that it was done in such a manner that the other passengers were not at all shaken or disturbed by the operation. The bus was not stopped, but was quickly slowed down to a speed to permit the animal to escape.

If, then, appellee has any case that may be permitted to go to the jury, it must be found in the contention that had the bus driver been using that degree of care required of him by law, he could or should have seen the animal in time to have begun the slowing down operation earlier and without the later necessity of using the emergency brakes.

Three witnesses saw the hog—the plaintiff, a passenger named Watkins, and the driver. The plaintiff did not see the hog until it was in the road. Neither of the other two witnesses saw it until it was coming down the slight embankment or ditch at the edge of the road, and about ten feet from the pavement at which time the hog was running towards the pavement. The driver testified that by the time he could apply the brakes the hog was in the road, and about seventy-five feet ahead, in which he is substantially corroborated by Watkins, and is not disputed by appellee. But the argument of appellee is that the driver could have seen the hog before it got to the em-

bankment, and should have anticipated that it would go into the road as it did.

The trouble with that argument is that the record is utterly blank as to where the hog was or what it was doing before it started down the embankment or ditch. It may have been lying down or standing still, or lazily walking along parallel with and wholly outside the right-of-way of the road. The rule is that, as to passengers, the highest degree of care must be taken to avoid collision with animals on, or which may be about to come on, the road in front of a passenger bus, 10 C. J., p. 971, 13 C. J. S., Carriers, sec. 748, p. 1407; but this means that the proven conduct of the animal must have been such as to provoke a reasonable anticipation that the animal was likely to come on the road—a rule which obviously cannot be invoked when it is not shown what the animal was doing before it reached the roadway and forthwith thereupon produced the necessity of using the emergency brakes, as was the case here.

We are not to be understood as intimating by what has been said in the foregoing paragraph that it is the duty of a driver of a passenger bus to keep a lookout beyond the embankment or ditch on each side of the road. That question is not before us here, because, as already stated, it is not shown what the driver would have seen or what indications would have been visible had he kept a lookout beyond the embankment. The requested peremptory charge for appellant should have been given.

Reversed, and judgment here for appellant.