IN THE SUPREME COURT OF TEXAS












IN THE SUPREME COURT OF TEXAS

 

════════════

No. 06-0247

════════════

 

Ulico Casualty Company,
Petitioner,

 

v.

 

Allied Pilots Association,
Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Second District of Texas

════════════════════════════════════════════════════

 

Argued April 11,
2007

 

 

            Justice Johnson delivered the opinion of
the Court.

 

            Chief Justice Jefferson filed a
concurring opinion.

 

 

            In this case we consider whether an
insurer’s contractual coverage under a claims-made policy can be expanded by
the doctrines of waiver and estoppel to cover a risk not otherwise within the
policy coverage: a suit against the insured that was not reported until after
the policy expired. We hold that if an insurer’s actions prejudice its insured,
the insurer may be estopped from denying benefits that would be payable under
its policy as if the risk had been covered, but the doctrines of waiver and
estoppel cannot be used to re-write the contract of insurance and provide
contractual coverage for risks not insured.

I.
Background

            Ulico Casualty Company issued a
claims-made liability policy to the Allied Pilots Association (APA). The policy
specified that it was effective from August 25, 1998 through August 25, 1999
and provided coverage, as relevant to this matter, for

 

all Loss which such
Insured shall become legally obligated to pay on account of any claim made
against the Insured during the Policy Period or, if exercised, during the
Extended Reporting Period, for a Wrongful Act committed, attempted, or
allegedly committed or attempted by such Insured before or during the Policy
Period, and reported to [Ulico] . . . during the Policy Period or the Extended
Reporting Period, if elected.

 

            The policy defined “loss” to include
defense costs. The policy required that, as a condition precedent to APA’s
rights under the policy, APA “give to [Ulico] written notice during the Policy
Period or the Extended Reporting Period, if elected, of any claim made against
[APA] for a Wrongful Act.” The policy provided that if Ulico cancelled or
refused to renew it, APA could have an extended period of twelve months beyond
the policy expiration date in which to report claims made against it—an
Extended Reporting Period (ERP)—based on acts committed by APA within the
policy period, provided APA paid an additional premium of fifty percent of the
annual premium. The ERP section also provided that if APA terminated the policy
or declined to renew, then Ulico could, “[i]f requested, at its sole
discretion, grant an Extended Reporting Period.”

            APA paid premiums for and Ulico
issued two written endorsements, each amending the policy and providing for an
extension of the Policy Period. The endorsements first changed the policy
period from August 25, 1998 to September 25, 1999, and then to October 25,
1999. On October 4, 1999, twenty-one days before the amended policy period
expired, APA was served with a suit styled Allen v. American Airlines, Inc.
APA forwarded the Allen suit papers to its insurance broker and to the
law firm of James & Hoffman, its regular outside litigation counsel. James
& Hoffman undertook defense of APA. Ulico was not notified of the suit
until APA’s agent forwarded notice of suit on November 5, 1999.[1]

            In December 1999, Ulico’s claims
analyst, Sheila Bowers, informed APA by letter that the claim was being
reviewed and that APA would be notified of Ulico’s coverage decision.
Referencing the Ulico policy, she advised APA that no defense fees, costs,
charges, or expenses may be incurred or settlements made without Ulico’s prior
written consent. In March 2000, Bowers sent APA’s counsel a letter stating that
the policy provided for defense costs, but Ulico was expressly reserving all
its rights to deny coverage. She enclosed litigation management forms, attorney
evaluation forms, and a form for the attorney’s time forecast. James &
Hoffman did not respond to Bowers’s letter. In April 2001, Bowers wrote the law
firm another letter which stated that pursuant to the reservation of rights
letter of March 1, 2000, “Ulico has agreed to reimburse [APA] for reasonable
and necessary defense expenses.” In May 2001, the firm responded and enclosed
its billings of approximately $635,000 for defending APA in the suit. At that
point, the law firm had defended the suit and filed a motion for summary
judgment on behalf of APA without any reports to or further contact with Ulico.
Neither APA nor its defense firm had sought Ulico’s approval for any actions or
for authorization to incur expenses in defense of the lawsuit. The trial court
granted summary judgment in APA’s favor in September, and an appeal by the Allen
plaintiffs was dismissed.

            Ulico filed suit in November 2001
seeking a declaratory judgment that it did not have coverage and did not owe
APA’s defense costs. APA counterclaimed. At trial, a jury found in response to
four liability questions that Ulico (1) granted an ERP during which APA
reported the Allen suit, (2) agreed to pay the Allen defense
costs separately and apart from the policy, (3) waived its right to assert that
the policy did not cover the Allen defense costs, and (4) was estopped
from asserting that the policy did not cover the Allen defense costs.
The jury found damages of $308,235. On cross-motions for judgment
notwithstanding the verdict, the trial court set aside the jury findings that
Ulico granted an ERP, that Ulico agreed to pay defense costs separately from
the policy, and of damages. The trial court entered judgment in favor of APA on
the waiver and estoppel findings for $616,468.55.[2]

            Relying on what has come to be
referred to as the Wilkinson exception, see Farmers Texas County
Mutual Insurance Co. v. Wilkinson, 601 S.W.2d 520 (Tex. Civ. App.—Austin
1980, writ ref’d n.r.e.), the court of appeals affirmed on the basis of waiver
and estoppel. 187 S.W.3d 91. It held that APA’s recovery under its waiver and
estoppel theories was effectively a recovery under the contract of insurance,
thus APA was entitled to recover attorney’s fees pursuant to Texas Civil
Practice and Remedies Code section 38.001(8). Id. at 108-10. The court remanded the
case for a determination of the amount of attorney’s fees. Id. at 110.

            Ulico asserts that the court of appeals
erred in holding it had contractual coverage for the Allen suit based on
either waiver or estoppel. Ulico notes that there was no evidence of promissory
estoppel or reliance damages. See Wheeler v. White, 398 S.W.2d 93, 97 (Tex. 1965). The jury
charge did not contain questions as to such damages, and APA lodged no
objections to the omission of those questions. APA urges that the trial court
erred in disregarding the jury findings that Ulico granted an ERP during which
APA gave written notice of the suit, and that Ulico agreed separately from the
policy to pay defense costs for the Allen suit. Because its holding on
the waiver and estoppel issues was dispositive, the court of appeals did not
reach the issues APA urges.

            We hold that Ulico’s policy coverage
was not expanded by either the doctrine of waiver or the doctrine of estoppel
so as to bring the Allen claims within the policy coverage. We also hold
that the trial court properly disregarded the jury findings that Ulico granted
an ERP extending the policy period and that Ulico separately agreed to cover
the Allen suit defense costs.

II.
Discussion

            When Ulico received notice of the Allen
suit on November 5, 1999, it did not have a contract of insurance in force with
APA. Its policy had terminated as of October 25, 1999. Ulico’s liability to APA
turns on whether Ulico’s actions after it received notice of suit created
obligations to APA.

A.
Preservation of Error

            At the outset we address APA’s
contention that Ulico failed to preserve error as to jury questions three and
four, which submitted waiver and estoppel. APA argues that Ulico waived and
invited error as to both doctrines because Ulico submitted the proposed
questions which the trial court included in the charge. Referencing Holland
v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94-95 (Tex. 1999), Ulico responds
that its complaint does not concern the form of the questions, but rather, that
(1) the questions should never have been submitted because regardless of the
jury’s answers, its policy coverage could not be expanded by waiver or
estoppel, and (2) there is no evidence to support the jury’s answers to either
of the questions. Ulico points out that when it requested the jury questions
and instructions, it specifically stated that the theories should not be
included in the charge, but that it was submitting the questions only because
APA’s requested questions and instructions were objectionable. Later, at the
charge conference, it objected on the grounds that waiver and estoppel “cannot
create coverage” where it does not otherwise exist under the policy. Further,
Ulico says that it repeatedly and consistently made its position clear to the
trial court through motions for summary judgment, directed verdict, and
judgment notwithstanding the verdict. We agree with Ulico. Its position was
made clear to the trial court and the trial court ruled against it. Ulico’s
actions were sufficient to preserve error. See id. (holding that the
defendant did not invite the trial court’s error in awarding attorney’s fees
that were not recoverable as a matter of law by requesting a limiting
instruction and failing to object to submission of the question); see also
Alaniz v. Jones & Neuse, Inc., 907 S.W.2d 450, 451-52 (Tex. 1995).

B.
Waiver and Estoppel

1.
The Law

            Proceeding to the merits of Ulico’s
complaints, we note that insurance policies are contracts. Barnett v. Aetna
Life Ins. Co., 723 S.W.2d 663, 665 (Tex.
1987). As such, the rights and obligations arising from them and the rules used
to construe them are those generally pertaining to contracts. See Forbau v.
Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). If an insurance contract covers
certain risks but the policy contains exclusions or limitations of coverage,
when the insured makes a claim for loss from a covered risk, the insurer must
assert any applicable exclusion or limitation to avoid liability. See
Employers Cas. Co. v. Block, 744 S.W.2d 940, 943-44 (Tex. 1988) (“According
to Tex. R. Civ. P. 94, if an insurer issues a policy insuring against general
hazards and the policy contains provisions limiting the coverage, the insurer
must plead the limiting provisions if it intends to rely on them at trial.”).
But when a policy covers risks for a certain time period, the time of the event
allegedly triggering coverage is a precondition to coverage and is not
considered a defensive matter to be pleaded and proved by the insurer. Id. The insurer
has neither a “right” nor a burden to assert noncoverage of a risk or loss
until the insured shows that the risk or loss is covered by the terms of the
policy. Id.
Once the insured does so, then it becomes incumbent on the insurer—that is the
insurer has the “right”—to assert any exclusions or limitations as affirmative
defenses. See id.

            In the context of issues such as
those presented by this case, the doctrines of waiver and estoppel are
frequently referenced together, but they are different. See Pa. Nat’l Mut.
Cas. Ins. Co. v. Kitty Hawk Airways, Inc., 964 F.2d 478, 480 n.5 (5th Cir.
1992) (noting that the doctrines of waiver and estoppel are distinct and
separate doctrines). Waiver is the intentional relinquishment of a right
actually known, or intentional conduct inconsistent with claiming that right. See
In re Gen. Elec. Capital Corp., 203 S.W.3d 314, 316 (Tex.
2006); Jernigan v. Langley, 111 S.W.3d
153, 156 (Tex. 2003); Bocanegra v. Aetna
Life Ins. Co., 605 S.W.2d 848, 851 (Tex.
1980). The elements of waiver include (1) an existing right, benefit, or
advantage held by a party; (2) the party’s actual knowledge of its existence;
and (3) the party’s actual intent to relinquish the right, or intentional
conduct inconsistent with the right. See Tenneco Inc. v. Enter. Prods. Co.,
925 S.W.2d 640, 643 (Tex.
1996). Estoppel, on the other hand, generally prevents one party from
misleading another to the other’s detriment or to the misleading party’s own
benefit. See, e.g., Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998) (“[T]he doctrine of
equitable estoppel requires: (1) a false representation or concealment of
material facts; (2) made with knowledge, actual or constructive, of those
facts; (3) with the intention that it should be acted on; (4) to a party
without knowledge or means of obtaining knowledge of the facts; (5) who
detrimentally relies on the representations.”); Trammell Crow Co. No. 60 v.
Harkinson, 944 S.W.2d 631, 636 (Tex. 1997) (“Promissory estoppel generally
is a defensive doctrine in that it estops a promisor from denying the
enforceability of [a] promise.”).

2.
Can the Doctrines be Used to Rewrite the Policy?

            This court addressed the question of
whether the contractual coverage of an insurance policy can be expanded by
waiver or estoppel over seventy years ago in Washington National Insurance
Co. v. Craddock, 109 S.W.2d 165 (Tex. 1937). In that case, Craddock, the
insured, was entitled to weekly indemnity payments if he became incapacitated
from an accidental injury. Id.
The policy specifically excepted gunshot wound injuries from coverage. Id. Craddock
accidently shot himself with a pistol, submitted a claim, and the insurer
started paying weekly benefits. Id.
at 165-66. After making eleven payments, the insurer stopped paying because the
injury was not covered. Id.
at 166. Craddock sued. In his pleadings Craddock acknowledged that the policy
specifically excepted injuries from gunshot wounds from coverage. Id. at 165.
Craddock claimed that he told the company’s agent and filed his claim showing
he was injured by a gunshot, yet the insurer paid weekly benefits. Id. at 165-66.
The issue and this Court’s answer were straightforward:

 

[B]ut he alleged
further that the company having paid him 11 weeks’ indemnity for an accidental
injury produced by a gunshot wound, had waived this condition of the policy,
and was therefore bound and obligated to pay him the remaining 93 weekly
installments, and was estopped from denying its liability by virtue of such
waiver. He alleged also that he had gone to considerable expense in securing
and preparing claims and proof of injury.

 

            . . . The question presented is not
whether the act of the insurance company in making payments would constitute a
waiver of its right to forfeit the policy on account of some breach by the
insured of its terms, but is whether a contractual liability may be created by
a waiver. By its policy the insurance company did not assume any liability for
the risk declared upon and no consideration moved to it after the accident for
the assumption of such liability. The insured seeks to create that liability by
invoking the doctrine of waiver. The doctrine cannot be made to serve that
purpose.

 

Id. at 166
(quoting Craddock v. Wash. Nat’l Ins. Co., 83 S.W.2d 689, 689 (Tex. Civ.
App.—Texarkana 1935)). This Court then quoted the Supreme Court of Michigan in
a similar case where a claim was made after the insured was killed in war:

 

[H]ere the [insurer]
makes no claim of forfeiture of the contract; on the contrary, it is insisting
upon the contract itself, and insisting that by its terms it did not insure the
deceased when engaged in military services in time of war. To apply the
doctrine of estoppel and waiver here would make this contract of insurance
cover a loss it never covered by its terms, to create a liability not created
by the contract and never assumed by the [insurer] under the terms of the
policy. In other words, by invoking the doctrine of estoppel and waiver it is
sought to bring into existence a contract not made by the parties, to create a
liability contrary to the express provisions of the contract the parties did
make.

 

Id.
(quoting Ruddock v. Detroit Life Ins. Co., 177 N.W.2d 242, 248 (Mich.
1920)). The Craddock Court quoted several additional cases with similar
language and held that the doctrines of waiver and estoppel could not create a
contract covering a risk not assumed by the insurer. Id. at 167.

            Fifty years later, in Texas
Farmers Insurance Co. v. McGuire, 744 S.W.2d 601 (Tex. 1988), we considered
whether estoppel could be applied to enlarge the coverage of a liability
policy. Glen McGuire was involved in an accident while driving his employer’s
vehicle and notified his personal automobile liability insurer, Texas Farmers
Insurance Company, of the accident. Id. at 602. James Bearden, a Texas
Farmers claims representative, took a statement from McGuire and discovered
that McGuire was driving his employer’s vehicle. Id. Bearden sent
McGuire a non-waiver agreement which McGuire signed and returned. Id.
Bearden then took another statement from McGuire which solidified Texas
Farmers’ position that it did not have coverage for the accident. Id.
Texas Farmers defended McGuire under a reservation of rights that advised
McGuire the policy might not afford coverage and that McGuire was at liberty to
hire counsel at his own expense. Id. Following a jury trial, judgment
was entered against McGuire. Id. McGuire sued Texas Farmers after it
declined to pay the judgment on the ground of noncoverage. The trial court
entered judgment for the insurance company, but the court of appeals reversed
and rendered judgment for McGuire based on our holding in Employers Casualty
Co. v. Tilley, 496 S.W.2d 552 (Tex. 1973). McGuire, 744 S.W.2d at
602. McGuire argued that under Tilley, Bearden’s failure to advise
McGuire to obtain an attorney before McGuire gave his second statement estopped
Farmers from denying coverage. Id. We rejected the argument:

 

            We hold that the court of appeals
erred in applying the estoppel rule of Tilley to the facts of this case.
The doctrine of estoppel cannot be used to create insurance coverage when none
exists by the terms of the policy. Washington Nat. Ins. Co. v. Craddock,
130 Tex. 251, 109 S.W.2d 165 (1937).

 

            Waiver and estoppel may operate to
avoid a forfeiture of a policy, but they have consistently been denied
operative force to change, re-write and enlarge the risks covered by a policy. In
other words, waiver and estoppel cannot create a new and different contract
with respect to risks covered by the policy. Great Am. Reserve Ins. Co.
v. Mitchell, 335 S.W.2d 707 (Tex. Civ. App.—San Antonio 1960, writ ref’d).

 

            In Tilley the insurer was
estopped by the actions of its attorney from asserting that the insured had
forfeited policy coverage because of late notice. The case at hand does not
involve a forfeiture; instead, it involves a question of risk coverage under
the contract. Because Texas Farmers’ action cannot estop it from relying on the
limitations of risk coverage set forth in the contract, it is not responsible
for the judgment against McGuire.

 

Id. at
602-03 (emphasis added). In McGuire, we mentioned the Wilkinson
exception, but did not analyze or discuss the exception because it was not
outcome-determinative. Id. at 603 n.1. We do so now.

3.
The Wilkinson Exception

            In Wilkinson, Berta Wilkinson
purchased a liability policy from Texas Farmers County Mutual which covered a
Datsun owned by her son, Clifton. 601 S.W.2d at 521. Clifton later sold the
Datsun and purchased a Ford which he was driving when he was involved in an
accident. Id. at 521. Without raising a coverage question, Farmers paid
for the property damage to the other vehicle and attempted to settle the
personal injury claims of the other party. Id. Negotiations failed, the
other party sued Clifton, and Farmers continued to try to settle the personal
injury claim without raising a coverage question. Id. Four and one-half
years after the accident, Farmers filed a declaratory judgment action seeking a
declaration that it had no coverage because Clifton was not a named insured,
and the Ford was not a covered vehicle. Id. After filing the declaratory
judgment action, Farmers sent Clifton two letters: one stated that Farmers had
forwarded the suit to attorneys who would defend Clifton, and the other
reserved Farmers’ rights to assert that there was no coverage under its policy.
Id. The attorneys chosen and paid by Farmers continued to represent
Clifton in the liability suit. Id. Based on a jury verdict in the
declaratory judgment action, the trial court entered judgment that the Farmers
policy covered Clifton for the accident and that Farmers had a duty to defend
him in the liability suit. Id.

            The court of appeals affirmed. Id.
at 523. It acknowledged the “well-established” rule that “the doctrines of
waiver and estoppel may operate to avoid conditions that would cause a
forfeiture of an insurance policy, [but] they will not operate to change,
re-write or enlarge the risks covered by the policy.” Id. at 521. But
the court then stated:

 

            However, it follows from these
general principles that, if an insurer assumes the insured's defense without
obtaining a reservation of rights or a non-waiver agreement and with knowledge
of the facts indicating noncoverage, all policy defenses, including those of
noncoverage, are waived, or the insurer may be estopped from raising them. Pacific
Indemnity Co. v. Acel Delivery Service, Inc., 485 F.2d 1169 (5th Cir.
1973); Ferris v. Southern Underwriters, 109 S.W.2d 223 (Tex. Civ.
App.—Austin 1937, writ ref’d); Automobile Underwriters’ Ins. Co. v. Murrah,
40 S.W.2d 233 (Tex. Civ. App.—Dallas 1931, writ ref’d). See: 81 A.L.R. 1326
(1932); 38 A.L.R.2d 1148 (1954); 7C Appleman, Insurance Law & Practice s
4892 (1979). This rule is based on the “ . . . apparent conflict of interest
that might arise when the insurer represents the insured in a lawsuit against
the insured and simultaneously formulates its defense against the insured for
noncoverage.” Pacific Indemnity Co. v. Acel Delivery Service, Inc.,
supra.

 

Id. at
521-22.[3]

            As indicated by the above quote, the
Wilkinson court did not specify whether it based its decision on waiver
or estoppel. Nor did it rest its decision on a determination that the insured
had been prejudiced. It held that an “apparent” conflict of interest that
“might” arise sufficiently justified judicial rewriting of the insurance
contract to include a risk not agreed to by the parties to the contract. Id.
at 522. The court cited several cases to support its conclusion that “it
follows” from the general principles enunciated by this Court in Craddock
“that, if an insurer assumes the insured’s defense without obtaining a reservation
of rights or a non-waiver agreement and with knowledge of the facts indicating
noncoverage, all policy defenses, including those of noncoverage, are
waived, or the insurer may be estopped from raising them.” Id. at 521-22
(emphasis added).

            We do not agree with Wilkinson’s
statement to the effect that “noncoverage” of a risk is the type of right an
insurer can waive and thereby effect coverage for a risk not contractually
assumed. As we said in Block, 744 S.W.2d at 943-44, the insurer does not
bear the burden of showing that it does not have a policy in place to cover a
particular risk; the insured bears the burden to show that a policy is in force
and that the risk comes within the policy’s coverage. An insurer’s actions can
result in it being estopped from refusing to make its insured whole for
prejudice the insured suffers because the insurer assumed the insured’s
defense, but estoppel does not work to create a new insurance contract that
covers a risk not agreed to by the contracting parties. See McGuire, 744
S.W.2d at 602-03. Thus there is no “right” of noncoverage that is subject to
being waived by the insurer, even by assumption of the insured’s defense with
knowledge of facts indicating noncoverage and without obtaining a valid reservation
of rights or non-waiver agreement. Nor do the cases cited by Wilkinson
support its conclusion otherwise, as the following review of them shows.

            To begin with, the Wilkinson
court failed to state the complete basis for the rule in its quotation from Acel.
See Wilkinson, 601 S.W.2d at 521-22. Although the quoted language seems
to indicate otherwise, the court in Acel did not hold only that there
was an apparent conflict that might prejudice the insured; it determined that
the insurer caused actual prejudice to its insured. 485 F.2d at 1175-76. The
quote from Acel, in context, is:

 

The theory
underlying this exception is based upon the apparent conflict of interest that might
arise when the insurer represents the insured in a lawsuit against the insured
and simultaneously formulates its defense against the insured for noncoverage. For
estoppel to prevent the assertion of a defense of noncoverage in accordance
with this exception, there must be a showing of prejudice. As to the
application of waiver, the proponent must demonstrate a voluntary
relinquishment of a known right . . . . Because the district court disposed
of this case on the basis of estoppel, we are not concerned with the
application of waiver in this appeal.

 

Id. at
1173 (emphasis added) (citations omitted).

            Acel involved a declaratory
judgment action to determine liability coverage for an airplane accident. Id.
at 1171. The trial court and court of appeals held that the incident in
question was not covered by the policy. The court found that Pacific Indemnity
Company was estopped from denying coverage for the judgment, however, because
it assumed defense of the suit without a valid non-waiver agreement or
reservation of rights when it had knowledge of facts indicating possible lack
of coverage and the insured was prejudiced. Id. at 1176. The court
determined the insured was prejudiced in several ways: (1) by Pacific’s failure
to notify the insured of possible lack of coverage so it could take measures to
defend itself, (2) by the manner in which the defense was conducted before
Pacific withdrew, (3) because the withdrawal took place just before trial, and
(4) because of the apparent conflict of interests that arose when Pacific
assumed the defense with doubts as to coverage and without notifying the
insured of the conflict. Id. at 1175-76. The court noted the similarity
of the facts to those in Tilley, in which this Court held that an
insured was prejudiced as a matter of law when an attorney hired by the insurer
simultaneously built a policy defense for the insurer and thus the insurer was
estopped from asserting a late-notice defense under the policy. Id. at
1176; see Tilley, 496 S.W.2d at 561.

            Wilkinson also cited Ferris
v. Southern Underwriters, 109 S.W.2d 223 (Tex. Civ. App.—Austin 1937, writ
ref’d), and Automobile Underwriters’ Insurance Co. v. Murrah, 40 S.W.2d
233 (Tex. Civ. App.—Dallas 1931, writ ref’d). However, neither Ferris
nor Murrah analyzed the issue of whether a liability policy’s coverage
could be expanded by waiver or estoppel to cover a risk not originally covered;
they merely cited prior cases for the rule and applied it to situations in
which the accident for which suit was brought was a covered risk.

            In Murrah, an indemnity
policy issued by Automobile Underwriters to C.E. Adair provided that Automobile
Underwriters would have no liability for accidents or injuries occurring if the
driver was intoxicated. 40 S.W.2d at 233. Automobile Underwriters exclusively
controlled Adair’s defense and did not withdraw from the case until the court
rendered against Adair even though it had notice five months before trial that
the driver may have been under the influence of alcohol at the time of the
accident. Id. at 234. The court concluded that:

 

[W]hen appellant,
with full knowledge of the issues to be tried in the suit against Adair, took
exclusive control and management of Adair’s defense in such suit, introduced
all of the evidence that was before the court on such defense, filed all of the
pleadings that were filed for Adair, examined and cross-examined all witnesses,
it thereby waived the defensive clauses in the policy of insurance.

 

Id. at
235 (emphasis added).

            The court cited as controlling
authority this Court’s decision in American Indemnity Co. v. Fellbaum,
263 S.W. 908 (Tex. 1924), where this Court held that under an indemnity policy,
the insurer, by defending the insured, was liable for a judgment against the
insured under the contract even though the insured had not paid the judgment:

 

It is true that the
provision does not say that if the indemnity company fails in its defense, and
judgment is rendered against the assured, it will pay the judgment; but we
believe that this was the purpose and intention of the parties when the
contract was made.

 

Id. at
909-10. In Fellbaum, this Court did not address whether policy coverage
could be judicially expanded to encompass a risk not agreed to by the parties;
it held that the policy language required the insurer to pay the judgment based
on the policy language itself, that is, the agreement the parties made. Id.
In short, neither Murrah nor the case it relies on support the rule that
a liability insurance policy’s risk coverage can be expanded by waiver or
estoppel.

            The court in Wilkinson also
cited Ferris, 109 S.W.2d 223, which also relied on Murrah. In Ferris,
Southern Underwriters issued an indemnity policy to G.A. Carter
requiring Southern to both defend Carter from suits and indemnify him for any
judgments he paid. Id. at 224. In a suit to determine whether Southern
was liable for a judgment entered against Carter, the trial court held that
because the policy did not cover the injuries at issue, the plaintiffs had no
right of action on the contract, and Southern did not become liable on the
contract by defending Carter. Id. at 225. The court of appeals reversed
and rendered judgment for the plaintiffs. Id. at 226. The court held
that the contract did in fact cover the injuries at issue. Id. at 225.
The court then concluded that the trial court erred in holding that Southern
did not become liable on its contract by appearing and having the suit defended
by its attorney. Id. at 22. The court said:

 

The rule is settled
in this state that “a defense by the insurer, in an action on the policy, that
a certain claimed liability is not within the policy terms, is waived when it
assumes absolute control, under the terms of its contract with insured, of the
action brought against the insured to recover damages.”

 

Id.
(quoting Am. Indem. Co. v. Fellbaum, 225 S.W. 873, 874 (Tex. Civ.
App.—San Antonio 1920), aff’d, 263 S.W. 908 (Tex. 1924)). The Ferris
court went on to cite Murrah; Dallas Coffee & Tea Co. v. Williams,
45 S.W.2d 724 (Tex. Civ. App.—Dallas 1931, writ dism’d w.o.j.); Leap v.
Braziel, 93 S.W.2d 1213 (Tex. Civ. App.—San Antonio 1936), modified,
121 S.W.2d 334 (Tex. 1938); and two A.L.R. articles. As previously discussed, Murrah
simply does not support the statement that the rule “is settled in this state.”
Murrah involved waiver of defensive provisions in an indemnity policy,
but did not hold that waiver expanded the risks covered. Further, neither Dallas
Coffee nor Leap involved the question of expanding risk coverage of
liability policies by assuming the defense of the insured.

            In Dallas Coffee, 45 S.W.2d
724, Automobile Underwriters Insurance Company asserted on appeal that as a
liability insurer, it had been improperly joined in a suit against its insured
and judgment against it was improper. Id. at 727-28. It did not contend
the accident was not covered by its policy. The court of appeals affirmed the
judgment against Automobile Underwriters, holding that if an insurer takes control
of a suit against an insured, as Underwriters did, any judgment against the
insured becomes, “in legal effect, a judgment against the insurer.” Id.
at 728. As can be seen, the court did not address risk coverage and whether a
policy’s coverage can be expanded by waiver or estoppel because the company did
not assert a “no coverage” position.

            Nor was a question presented as to
whether risk coverage of a liability insurance policy could be expanded by
waiver or estoppel in Leap, 93 S.W.2d 1213. Maryland Casualty Company
was originally impleaded as a defendant in a suit against its insured but was
dismissed upon its own motion. Id. at 1216. Maryland’s attorneys
defended its insured in the suit. Id. The trial court refused to enter
judgment against Maryland. Id. at 1216-17. The court of appeals reversed
as to Maryland on two bases: Maryland’s control of the defense and the policy
language. Id. at 1218-19. Citing Murrah and Fellbaum,
among other authorities, the appeals court said

 

[T]he rule now
prevails in this and other jurisdictions that where an insurance company, in
pursuance of the terms of such contract, takes charge of and manages and
contests the suit against the assured until the recovery of final judgment
against him thereon, it thereby becomes so connected with the litigation, by
its interest in the result and participation therein, as to be bound by such
judgment, and is estopped to deny its liability thereon.

 

Id. at
1218. This Court did not approve the court of appeals’ language, but rather,
reversed the judgment against Maryland: “[Maryland] Casualty Company was in no
sense a party to the suit and the Court of Civil Appeals was wholly without
jurisdiction over it. The judgment as to it was therefore a nullity.” Leap
v. Braziel, 121 S.W.2d 334, 336 (Tex. 1938).

            Finally we reach the court of
appeals’ opinion in Fellbaum, 225 S.W. 873, which seems to be the
seminal Texas case for the proposition that waiver or estoppel can be used to
rewrite a policy and include risks not agreed to by the parties. Fellbaum
involved a policy similar to those in Ferris and Murrah that
called on the company to defend its insured and to indemnify its insured for
judgments the insured paid. Id. at 873. The court of appeals did not
construe the policy language to require American Indemnity to discharge its
insured’s liability for the judgment against it if the insured had not paid the
judgment. Rather, the court held that American Indemnity was liable on its
policy because it controlled defense of the suit. Id. at 874. The court
did not address whether prejudice had been shown by the insured:

 

            A defense by the insurer, in an
action on the policy, that a certain claimed liability is not within the policy
terms, is waived when it assumes absolute control, under the terms of its
contract with insured, of the action brought against the insured to recover
damages. When appellant assumed the exclusive management and control of the
suit for damages . . . , as it was empowered to do under the terms of the
policy, it became unconditionally liable for the amount of the judgment
rendered . . . .

 

            . . . .

 

            No reservations were made as to its
liability by appellant when it assumed control of the case. The judgment is in
effect one against appellant as well as against Carr, and it must pay off and
discharge the judgment. There are other authorities that sustain this ruling .
. . . We have seen no Texas case that passes on the question.

 

Id. at
874 (emphasis added) (citations omitted). While this Court affirmed the court
of appeals’ judgment, it did not do so on the basis of waiver or estoppel.
Rather, it did so by holding the insurer was directly liable to the judgment
creditor based on the policy language. Fellbaum, 263 S.W. at 909-10.

            The court of appeals’ decision in Fellbaum
and the cases citing it underlie general statements such as that made in Wilkinson
that the doctrines of waiver and estoppel preclude an insurer from asserting
the “defense of noncoverage” if the insurer assumes the defense of its insured
without a valid reservation of rights or non-waiver agreement. The cases cited
in Wilkinson, however, do not support its conclusion.

                                                                                                 
4. Prejudice

            Justification for the Wilkinson
rule typically is noted as the “apparent conflict of interest that might
arise when the insurer represents the insured in a lawsuit against the insured
and simultaneously formulates its defense against the insured for noncoverage.”
Wilkinson, 601 S.W.2d at 522 (emphasis added). Under some circumstances,
insurers who take control of their insured’s defense without a valid
reservation of rights or non-waiver agreement can and should be prevented from
denying benefits that would have been payable had the claim been covered
because the insured is actually prejudiced by the insurer’s actions. See,
e.g., Acel, 485 F.2d 1169. But the possibility that an apparent
conflict of interest might arise under these circumstances is insufficient
justification for judicially rewriting the parties’ agreement.

            Tilley, 496 S.W.2d 552, a
case referenced by the court of appeals in the case now before us as well as by
the Wilkinson court, offers an example of the former situation—one in
which actual prejudice occurs. In Tilley, we discussed the doctrines of
waiver and estoppel in connection with an undisclosed conflict of interest
between an insurer and its insured. There, Employers Casualty Company
simultaneously defended its insured, Tilley, and formulated a late-reporting
coverage defense. Id. at 554. Employers then sought a declaratory
judgment that Tilley violated provisions of the policy requiring prompt notice
of an accident and thus, this violation relieved Employers of any obligation
under its policy. Id. Neither Employers nor the defense attorney
notified Tilley of the specific policy defense being developed by Employers,
nor did the defense attorney notify Tilley of the conflict of interest created
by the attorney simultaneously representing Tilley, obtaining and furnishing
evidence to Employers that was detrimental to Tilley’s interests, and advising
Employers as to its late notice defense. Id.

            In the declaratory judgment action,
Employers conceded that it had coverage for the accident unless Tilley violated
a policy provision requiring Tilley to give Employers notice of the accident
“as soon as practicable.” Id. at 555. The trial court granted Tilley’s
motion for summary judgment in which he asserted waiver and estoppel theories
related to Employer’s late notice defense. Id. at 554. We discussed the
“serious questions involving legal ethics and public policy” in the foregoing
context. Id. at 557. We held that Tilley had been prejudiced and
Employers was estopped to deny coverage:

 

We think prejudice
to Tilley . . . has been shown as a matter of law.

 

            Under the undisputed facts and
circumstances of this case, it would be untenable to permit Employers to
disclaim liability for the defense of Tilley in the [personal injury] suit on
account of the late notice defense. Its conduct being violative of the guiding
principles and public policy heretofore discussed, we hold that Employers is
estopped as a matter of law from denying the responsibilities under its policy
for defense of the [personal injury] suit.

 

Id. at
561.

            We discussed the doctrines of both
waiver and estoppel in Tilley, but we did not hold that Employers waived
its late notice defense. We determined that Tilley had been prejudiced and held
that Employers was estopped from asserting the late notice forfeiture provision
of its policy. Id. The question was not presented as to whether either
the doctrine of waiver or estoppel can expand the coverage of a liability
policy to encompass a risk or period of time for which no premiums were paid.
Nor did we hesitate to label the situation as an actual conflict of a most
serious nature, not an “apparent conflict of interest that might arise.” See
Wilkinson, 601 S.W.2d at 522.

            When an insurer’s defense of or
controlling the defense of the insured prejudices an insured, as happened in Tilley
and Acel, the insurer cannot escape liability for the detriment its
actions cause its insured. In those cases, the insurer was estopped from
refusing to pay the damages its actions caused, but there was no rewriting of
the insurance contract. We think Tilley’s rule, ethical rules applicable
to attorneys defending insureds, and the doctrine of estoppel all work to
protect an insured without the necessity of remolding the doctrines of waiver
and estoppel to create an anomaly in the law by judicially rewriting agreements
between insurers and insureds.

            Tilley condemned a situation
in which a defense attorney provided by an insurance company has divided
loyalty that results in prejudice to an insured. It goes without saying that an
attorney defending an insured has the obligation to fully disclose to the
insured conflicts of interest, whether because of the attorney’s relationship
with the insurer or otherwise. That obligation is independent of the insurer’s
issuing a valid reservation of rights or obtaining a non-waiver agreement. We
fail to see how the insured is not protected from prejudice by the rule of Tilley
or a variation of that rule. In contrast, the Wilkinson rule would
afford the insured more contractual coverage than the policy provided, even
if the insurer provides a perfect defense at no cost to the insured and the
insured suffers no prejudice. The question on which the insurer’s liability
should turn is whether an insured is prejudiced as a result of the conflict, an
inadequate or absent disclosure, or other actions of the insurer. See, e.g.,
Acel, 485 F.2d at 1175-76 (holding, in part, insured was prejudiced by the
manner in which it was defended by the insurer); In re Gen. Elec. Capital Corp., 203 S.W.3d at 316; Jernigan,
111 S.W.3d at 156; Bocanegra, 605 S.W.2d at 851; Tilley,
496 S.W.2d at 559. Such issues seem to us to be no more subtle or difficult to
prove than other issues of damages from breach of the attorney-client or
insured-insurer relationship. In sum, if an insurer defends its insured when no
coverage for the risk exists, the insurer’s policy is not expanded to cover the
risk simply because the insurer assumes control of the lawsuit defense. But, if
the insurer’s actions prejudice the insured, the lack of coverage does not
preclude the insured from asserting an estoppel theory to recover for any
damages it sustains because of the insurer’s actions.

                                                                                           
5. The Jury Charge

            The trial court submitted the “Wilkinson
exception” to the jury by two separate questions. Jury question three submitted
APA’s estoppel theory:

 

            Is Ulico estopped from asserting
that the APA’s claim for attorney’s fees and expenses incurred in defending the
Allen Action is not covered by the Policy?

 

 

Jury question four submitted the
waiver theory:

 

 

            Has Ulico waived its right to assert
that the APA’s claim for attorney’s fees and expenses incurred in defending the
Allen Action is not covered by the Policy?

 

Both questions
were accompanied by definitions and instructions, including an instruction that
waiver and estoppel “generally cannot be used to create insurance coverage when
none exists under the terms of an insurance policy. But, in certain circumstances,
[they] may expand the coverage provided under an insurance policy.” In Craddock
and McGuire, we said neither doctrine could effect a change in the
policy’s coverage. Craddock, 109 S.W.2d at 166-67; McGuire, 744
S.W.2d at 602-03. We adhere to that position. Changing a policy’s coverage to
encompass risks otherwise not covered must be by contractual means. Such means
could include, for example, the manner in which Ulico and APA agreed to twice
extend the policy period: APA sought a policy period extension, Ulico agreed,
APA paid the specified premium, and Ulico issued a written endorsement changing
the policy period.

            Jury questions three and four, which
submitted the theories of expanding Ulico’s policy coverage by waiver and
estoppel, are immaterial and cannot support a judgment against Ulico. Because
we determine that Ulico’s policy coverage could not be expanded by waiver or
estoppel, we do not reach its assertions that even if Wilkinson properly
stated the law, Ulico still must prevail because there was no evidence that it
either assumed control of APA’s defense or that APA was prejudiced by its
actions.[4]

C.
Judgment Notwithstanding the Jury Verdict

            APA urges that if judgment in its
favor is not sustained on the waiver and estoppel findings, judgment should
nevertheless be affirmed on the basis of the jury’s findings that Ulico granted
APA an ERP and that Ulico and APA agreed, separate from the policy, that Ulico
would reimburse APA for the cost of defending the Allen suit. The trial
court granted Ulico’s Motion for Judgment Notwithstanding the Jury Verdict as
to both questions and jury findings. 

            The court of appeals did not address
the trial court’s actions in disregarding the jury’s answers to questions one
and two. We will consider the issues rather than remanding for review by the
court of appeals. See Tex. R.
App. P. 53.4.

1.
Extended Reporting Period

            Jury question one asked whether
Ulico agreed to grant APA an ERP under the policy, during which APA reported
the claim. APA first contends that the trial court could only disregard the
jury’s “yes” answer if no evidence supported the answer, and that Ulico’s
actions were evidence that Ulico impliedly granted an ERP.[5] See Tex. R. Civ. P. 301 (providing that a court may disregard a
jury finding on a question that has no support in the evidence). APA bases its
position on this section of the policy providing that Ulico could grant an ERP
if APA decided not to renew coverage:

 

            Section II. EXTENDED REPORTING
PERIOD

. . . If the insured
terminates or declines to accept renewal [of the Policy], [Ulico] may, if
requested, at its sole option, grant an Extended Reporting Period.

 

APA urges that
the referenced policy language does not require Ulico’s grant of an ERP to be
in writing, and that Ulico’s two letters together with its internal computer
entries are some evidence that an ERP was both requested and granted. Ulico
replies, in part, that APA is wrong in its position that the policy does not
require a writing to grant an ERP. Ulico specifically references paragraph F of
the GENERAL CONDITIONS section of the policy:

 

            F.
ALTERATION & ASSIGNMENT

            No change or modification of, or
assignment of interest under this policy shall be effective except when made by
written endorsement to this policy signed by an authorized representative of
[Ulico].

 

Ulico argues that
its position is supported by (1) Bowers’s testimony that she did not consider
APA to have requested an ERP, she did not grant one, and her letters stating
that defense costs were covered by the policy were no more than coverage
determination mistakes because she did not realize that the policy had expired
before the claim was reported; and (2) testimony of an independent computer
company employee that he made computer entries of “EXTENDED REPORTING PERIOD”
and “coverage” in October 2001 to “fool” the computer as part of converting
Ulico’s files to a computer system because without such notations, the system
would not allow the entry of a claim that was outside the policy period.

            We agree with Ulico. The policy
expressly required written notice of a claim, which is what APA provided. The
written notice of a claim did not request a period of time for an ERP or
specify that an ERP was being requested. The policy required a request for an
ERP under these circumstances. Ulico’s written responses did not grant any
period beyond the policy period during which a claim could be reported and
still comply with coverage requirements.[6]

            APA correctly notes that the
applicable language of the EXTENDED REPORTING PERIOD section does not require a
written request from the insured. But that language cannot be read separately
and in isolation from the GENERAL CONDITIONS requirement that no change or
modification of the policy shall be effective except when made by written
endorsement signed by an authorized representative of the company. See
Forbau, 876 S.W.2d at 133 (noting that we consider the contract as a whole,
read all parts together to ascertain the agreement of the parties, and give
effect to each part of the contract). The EXTENDED REPORTING PERIOD language
specified the process by which an ERP could be requested by an insured or
granted by Ulico, but the GENERAL CONDITIONS specified when an ERP would be
effective: when made by written endorsement signed by an authorized
representative of the company. We agree with the trial court that no evidence
supports the finding that APA’s claim was made during a period for which Ulico
granted an ERP.

            APA also claims the trial court
erroneously failed to apply a “no-evidence” standard of review in disregarding
the jury’s answer, pointing to the trial court’s conclusion of law that “the
evidence does not support” APA’s claim that an ERP was granted. APA claims this
indicates that the trial court improperly disregarded the jury’s finding based
on insufficient rather than no evidence. But even if the trial court applied
the wrong standard in reaching its decision to disregard the jury’s answer,
Ulico is entitled to a no-evidence review because it asserted in its Motion for
Judgment Notwithstanding the Verdict and its cross-issues that no evidence
supported the jury finding. The trial court properly granted judgment
notwithstanding the verdict on that ground.

2.
Separate Agreement

            Jury question two asked whether
Ulico and APA agreed, separate from the policy, that Ulico would reimburse APA
for costs of defending the Allen suit. The trial court granted Ulico’s
motion to disregard the jury’s affirmative answer. The trial court entered
Findings of Fact and Conclusions of Law and specified that they were being
entered regarding the issue of attorney’s fees. Conclusions of Law numbers five
and six addressed the “separate agreement” question:

 

5.        
To the extent the APA contends that correspondence from Ulico to the APA after
the end of the Policy period can be construed as a supplemental agreement by
Ulico to cover a claim which was not otherwise covered by the Policy, there was
no consideration for the alleged agreement.

6.        
The APA and Ulico did not enter into an agreement, separate from the Policy,
for Ulico to reimburse the APA for its attorney’s fees incurred in the Allen
Action.

 

Apparently
assuming that these conclusions apply to the entirety of the trial court’s
judgment, APA urges that the trial court erred in its conclusions. Assuming,
without deciding, that the trial court’s findings and conclusions apply to the
entirety of its final judgment as opposed to only that part of the judgment
denying recovery of attorney’s fees, we conclude that APA’s contentions are
without merit.

            APA claims the trial court erred in
concluding there was no consideration for a supplemental agreement because
Ulico had the burden of proof on the issue of lack of consideration and waived
the defense by failing to (1) file a verified pleading regarding no
consideration, and (2) request a jury question on and obtain a finding as to
lack of consideration. First, we address APA’s contention that Ulico waived the
issue by failing to file a verified pleading. Ulico asserts that a verified
denial was not required because the April 2001 letter from Bowers was not a
“written instrument upon which a pleading is founded” within the meaning of
Texas Rule of Civil Procedure 93(9). Ulico also asserts that APA waived any
objection regarding the lack of pleading because APA failed to object to
testimony that it did not pay for a separate agreement and the issue was tried
by consent. We agree that APA failed to preserve error when it failed to object
to testimony regarding the lack of an additional premium. See Tex. R. App. P. 33.1.

            As to the merits, our statement in Federal
Sign v. Texas Southern University, 951 S.W.2d 401 (Tex. 1997), guides us in
determining whether there was consideration for the alleged separate agreement.
In Federal Sign we said:

 

Consideration is a
bargained for exchange of promises. Consideration consists of benefits and
detriments to the contracting parties. The detriments must induce the parties
to make the promises and the promises must induce the parties to incur the
detriments.

 

Id. at
408-09 (citations omitted). APA asserts that the letter from Bowers dated March
1, 2000 was an “agreement separate from the Policy,” and that the separate
agreement was confirmed by the April 25, 2001 letter. APA cites Northern
Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 607 (Tex. 1998), for the
proposition that surrendering legal rights represents valid consideration for
an agreement. APA says that it accepted Ulico’s separate promise to pay defense
costs by continuing to pay for its defense, by cooperating with Ulico, and by
disclosing confidential, privileged information to Ulico in reliance on Ulico’s
promise. APA cites as evidence the April 25, 2001 letter from Bowers to APA’s
attorney and the May 3, 2001 response by APA’s defense attorney Hoffman,
enclosing the attorney’s evaluation form and copies of the firm’s billings.
There is no evidence, however, that Ulico recieved any benefit from any
“continued” payments of costs by APA or APA’s “cooperation.” Nor is there
evidence that APA would have at any time discontinued paying for its defense
absent Bowers’s letters, or that APA’s “cooperation” with Ulico or Hoffman’s
letter dated May 3, 2001 constituted any detriment to APA so as to constitute consideration.

            In Northern Natural Gas, we
noted that “[c]onsideration is defined as ‘either a benefit to the promisor or
a loss or detriment to the promisee. Surrendering a legal right represents
valid consideration.’” Id. at 607 (quoting Receiver for Citizen’s
Nat’l Assurance Co. v. Hatley, 852 S.W.2d 68, 71 (Tex. App.—Austin 1993, no
writ). We held that Northern’s contractually binding itself to deliver all the
natural gas it received under certain contracts was the surrendering of a legal
right and constituted consideration. Id. In contrast to the situation in
Northern Natural Gas, the May 3, 2001 letter from APA’s defense
attorneys disclosed that for all practical purposes, the case was dormant:
discovery had closed, the parties were awaiting a decision from the court on
their motions for summary judgment, and no trial date had been set. APA did not
undertake any obligation nor did it surrender any legal right by means of
Hoffman’s letter. The letter merely submitted bills for payment, gave a factual
recitation of the case progress, estimated a fifty-percent chance of success if
the case were to be tried, and stated that “[i]f we prevail on summary
judgment, expenses could be capped at the present amount.” Furthermore, Hoffman
testified that his firm did not take or fail to take any action in defending
APA because of Bowers’s letters. APA alleges, but does not explain how, merely
submitting its attorneys’ bills and expenses was a detriment under these facts.
We agree with the trial court that there was no evidence of consideration for
an alleged “separate agreement” that Ulico would pay APA’s defense costs, and
there was no need for Ulico to obtain a jury finding of no consideration.

            Having determined that there was no
consideration for an alleged agreement, we need not and do not consider APA’s
contention that the trial court erred in concluding there was no separate
agreement in the first place.

                                                                                                III.
Conclusion

            Jury questions three and four were
immaterial and could not form the basis of a judgment against Ulico. The trial
court correctly rendered judgment notwithstanding the verdict in favor of Ulico
as to jury questions one and two. There is no basis for a judgment against
Ulico and the judgment of the court of appeals must be reversed. Judgment is
rendered that APA take nothing.

 

 

                                                                        ________________________________________

                                                                        Phil Johnson

                                                                        Justice

 

OPINION DELIVERED: August 29, 2008














[1]
APA did not renew its liability policy with Ulico.  It purchased a new
policy from Legion Insurance Company.





[2]
APA had a deductible that reduced its damages to less than the full defense
costs.





[3]
This court refused writ in Wilkinson with the notation “no reversible
error.”  That designation meant the Court was not satisfied that the
opinion of the court of appeals correctly declared the law, but that the
application presented no error requiring reversal of the judgment.  See
City of Dallas v. Dixon, 365 S.W.2d 919, 922 (Tex. 1963); Commercial
Standard Ins. Co. v. Marin, 488 S.W.2d 861, 864 (Tex. Civ. App.—San Antonio
1972, writ ref’d n.r.e.) (stating that the notation “refused, no reversible
error” “merely means that the application for writ of error presents no error
which requires reversal . . . [which may be] because the application for writ
of error does not present to the Supreme Court the error which renders the
judgment incorrect”).





[4]
However, we note in passing that, as discussed below, there was no evidence APA
suffered detriment because of Ulico’s actions.  Also, Ulico acknowledges
that another element of the Wilkinson exception is it did not obtain an
effective reservation of rights. Ulico did not address whether its reservation
of rights was effective to preserve its right to deny coverage.  





[5]
In urging that the trial court erred, APA points specifically to evidence that
(1) Ulico’s internal computer files referenced “EXTENDED REPORTING PERIOD” next
to the word “Coverage” and another similar entry; (2) APA’s agent was notified
on October 26, 1999 that the policy expired on October 25, then APA’s agent
submitted a claim for the Allen suit specifying the October 25 policy
expiration date and a late reporting date of November 4, 1999; (3) after receiving
the claim, Ulico’s underwriter advised Ulico and the APA by letter dated
November 16, 1999 that the policy expired on October 25 and APA’s Notice of
Loss form was received after that date; (4) Ulico internally noted the issue of
late reporting and directed Bowers to question the delayed reporting when the
claim was assigned to her; (5) APA and Ulico exchanged letters in December 1999
and in its next letter in March 2000, Ulico did not object to the timing of the
notice of the claim, did not deny coverage for late reporting, and stated that
defense costs were afforded to APA under the policy; and (6) in April 2001,
Ulico again wrote APA without objecting to the timing of the notice of the
claim, denying coverage, or reserving Ulico’s rights, and specifically stated
that Ulico had agreed to reimburse APA for reasonable and necessary defense
expenses.





[6]
Because there was no writing purporting to endorse the policy by granting an
ERP, we need not and do not address the question of whether Bowers had
authority to execute such an endorsement.